122 F.3d 480
 Betty Y. JANG, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
A.M. MILLER AND ASSOCIATES, a Minnesota Corporation,
Defendant-Appellee.
Jeffrey L. GAMMON, individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
GREAT LAKES COLLECTION BUREAU, INCORPORATED and Novus Credit
Card Services, a Delaware Corporation, doing
business as Discover Card Services,
Defendants-Appellees.
 Nos. 96-3173, 96-3174.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 22, 1997.
Decided Aug. 27, 1997.
 
 James Shedden (argued), David J. Philipps, Catherine Lee Gemrich, Michael S. Hilicki, Beeler, Schad & Diamond, Chicago, IL, for Plaintiffs-Appellants.
 Melissa A. Murphy-Petros (argued), Clausen Miller, P.C., Chicago, IL, Lawrence T. Hofmann, Zelle & Larson, Minneapolis, MN, Scott C. Frost, Alan I. Ehrenberg, Blatt, Hasenmiller, Leibsker, Moore & Pellettieri, Chicago, IL, for defendant-appellee A.M. Miller and Associates.
 Melissa A. Murphy-Petros (argued), Edward M. Kay, James T. Ferrini, Susan Condon, Clausen Miller, P.C., Chicago, IL, for defendant-appellee Great Lakes Collection Bureau, Inc.
 Paul B. Uhlenhop, Charles J. Risch, Paul M. Weltlich, Lawrence, Kamin, Saunders & Uhlenhop, Chicago, IL, for defendant-appellee Novus Credit Card Services.
 Before COFFEY, KANNE and ROVNER, Circuit Judges.
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 Betty Jang and Jeffrey Gammon filed nearly identical class action complaints against two collection agencies that sent them dunning letters on behalf of Discover Card for alleged outstanding credit card debts. Jang and Gammon complained that although the dunning letters technically complied with the Fair Debt Collection Practices Act, they were misleading because the collection agencies never intended to fully comply with the statutory notices set forth in the letters. We agree with the district court that Jang and Miller failed to state a claim against the collection agencies because the agencies did all they were required to do under the FDCPA.I.
 
 
 2
 Discover Card hired A.M. Miller and Associates and Great Lakes Collection Bureau (the "Agencies") to collect credit card debts allegedly due from Jang and Miller respectively. Each of the Agencies initiated their efforts by mailing a dunning letter to their respective targets. The letter Jang received stated in relevant part:
 
 
 3
 Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
 
 
 4
 With some slight variations in spelling, punctuation and type face, Gammon received an identical statement. Both Jang and Gammon, through their attorneys, disputed the validity of the debts and requested verification. A.M. Miller never responded to Jang's request for verification, but it did cease all collection activity. Eventually, Discover Card provided the requested verification, and Jang paid her bill. Great Lakes notified Gammon's attorney that "following instructions from the Credit Grantor, Discover Card, we closed our files and returned the above notated account." Great Lakes also ceased all collection activity. Again, Discover Card eventually provided the requested verification, but in Gammon's case, only after he filed suit.
 
 
 5
 Jang and Gammon alleged in their complaints that the Agencies knew when they sent out the dunning letters that they would never provide verification. Jang claimed that A.M. Miller had a policy of returning all Discover Card accounts to Discover Card upon receiving a validation request. Gammon alleged that Discover Card required its collection agencies to return accounts for which validation is requested. Both alleged that the Agencies returned their accounts to Discover Card pursuant to these policies. Jang alleged that because of the policy, the dunning letter she received was false, misleading and deceptive, and therefore violated section 1692e of the FDCPA. Gammon similarly charged that the letter was false, deceptive and misleading in violation of section 1692e, and also alleged that this same conduct violated section 1692f of the FDCPA, which prohibits the use of any unfair or unconscionable means to collect a debt.
 
 
 6
 The district court dismissed with prejudice both complaints because the Agencies had complied with the FDCPA. The dunning letters sent by the Agencies mirrored the language required by section 1692g(a). The district court noted that the statute leaves no room for deviation in the language of the validation notice, and that the Agencies would have violated the statute if they had made any lesser promises than those required by section 1692g. Further, the Agencies ceased collection activities immediately upon receiving the requests for validation, in compliance with section 1692g(b). The court also noted that the statute does not require debt collectors to actually provide validation. Rather, it requires that the debt collector cease all collection activity until it provides the requested validation to the debtor. The court concluded that the Agencies' prior knowledge of Discover Card's verification procedure was irrelevant, and that strict compliance with section 1692g could never result in violation of sections 1692e or 1692f. The court therefore dismissed with prejudice both complaints.
 
 
 7
 On appeal, Jang and Gammon argue that the promise to provide validation when the Agencies knew that they would instead return the accounts to Discover Card constitutes a false, misleading and deceptive practice under the FDCPA. They also contend that this "false promise" violates the FDCPA provisions against unfair collection practices because it undermines the protections and purpose of the validation requirement.
 
 II.
 
 8
 We review de novo the district court's dismissal of the complaints for failure to state a claim. Boland v. Engle, 113 F.3d 706, 708 n. 1 (7th Cir.1997). A complaint is properly dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir.1996). At this stage of the proceedings, we accept as true all well-pleaded facts contained in the complaints, and we construe all reasonable inferences in favor of the plaintiffs. Boland, 113 F.3d at 708 n. 1. We accept as true, therefore, the plaintiffs' allegations that the Agencies knew when they sent the letters that they had no intention of ever providing verification, because each had agreed in advance with Discover Card to return any file where the debtor requested verification. Because the statute requires only that a debt collector cease all collection activity until verification of the debt is provided to the debtor, and because the plaintiffs admitted that the Agencies ceased all collection activities after plaintiffs requested verification, we find that complaints were properly dismissed for failure to state a claim.
 
 
 9
 Section 1692g(a) requires that within five days of communicating with a consumer in relation to debt collection, the debt collector must provide certain information and notices to the consumer. In addition to providing the amount of the debt and the name of the creditor to whom the debt is owed, the debt collector must provide:
 
 
 10
 a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
 
 
 11
 a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
 
 
 12
 a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
 
 
 13
 15 U.S.C. § 1692g(a)(3)-(5) (internal numbering omitted). If the consumer disputes the debt in writing, then "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, ... and a copy of such verification or judgment ... is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b).
 
 
 14
 Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities. See Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1031 (6th Cir.1992) (debt collector does not violate the FDCPA when it ceases collection activity after receiving request for validation; debt collector need not first send validation before ceasing collection activity). The statute wisely anticipates that not all debts can or will be verified. After all, in the real world, creditors and debt collectors make mistakes, and sometimes initiate collection activities against persons who do not owe a debt. When a collection agency cannot verify a debt, the statute allows the debt collector to cease all collection activities at that point without incurring any liability for the mistake. Jang and Gammon admitted at oral argument that the Agencies complied with all of the requirements of section 1692g, conceding that the Agencies provided the required notice, and then ceased collection activities after receiving requests for validation. But they claim they were mislead by the statutorily required notice promising the Agencies would provide validation when the Agencies never intended to do so, instead intending to always opt to cease collection activities and send the file back to Discover Card.
 
 
 15
 In deciding whether a debt collection letter is false, misleading or deceptive, we view the letter through the eyes of an unsophisticated consumer. Gammon v. GC Services Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir.1994). The "unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness." Id. That objective element of reasonableness, in turn, protects debt collectors from liability for "unrealistic or peculiar interpretations of collection letters." Id. With that standard in mind, we review the letters provided by the Agencies here. Both letters tracked the required statutory language nearly verbatim. Neither letter contained additional, contradictory language. The plaintiffs admit the language used is acceptable under the statute. We must conclude under these circumstances that the letters were not false, misleading or deceptive.
 
 
 16
 The inconsistency, to the extent there was one, between what was promised in the letters and what the Agencies actually did is expressly allowed by the statute. After requiring debt collectors to promise verification upon request, the statute allows debt collectors to sidestep this requirement by ceasing all collection activities. Although the statute might be more informative for debtors if it required a notice that the debt collector would either provide the requested verification or cease all collection activities, it is not our job to rewrite the statute. When a debt collector provides the language required by the statute, and only the language required by the statute, we hold that a collection letter cannot be false, misleading or deceptive merely because the collection agency always chooses one statutorily allowed path (ceasing all collection activity) over the other (providing debt verification). See also Moore v. Ingram & Assoc., Inc., 805 F.Supp. 7, 8-9 (D.S.C.1992) (notice that debt collector will obtain verification or judgment when collector knows no judgment exists is not misleading when the notice tracks the statutorily required language); In re Barr, 54 B.R. 922, 925-26 (D.Or.1984) (same); Blackwell v. Professional Business Services of Georgia, Inc., 526 F.Supp. 535, 538-39 (N.D.Ga.1981) (same). Similarly, a debt collector who strictly complies with the provisions of the FDCPA cannot be said to have used unfair or unconscionable means to collect a debt under section 1692f.
 
 
 17
 We address one final concern raised by the plaintiffs. Jang and Gammon contend that our approval of Discover Card's practice would allow creditors to thwart the purpose of the verification notice. They contend that when a creditor receives a file back from a collection agency because the debtor has requested verification, the creditor can simply assign the file to another collection agency which can again initiate collection activities. After the file has been reassigned a few times, the debtor may become frustrated, they contend, and may pay the debt without ever obtaining verification of the debt. We have two responses to this scenario. First, no such thing happened in this case. In Jang's case, Discover Card provided the validation and Jang paid her debt. In Gammon's case, Discover Card also provided validation, but the record does not reflect whether Gammon ever paid the debt. Neither plaintiff alleged that Discover Card repeatedly reassigned files until frustrated and harassed debtors paid unverified debts. Second, it is for Congress, and not the courts, to close this alleged loophole in the FDCPA.
 
 
 18
 AFFIRMED.