150 F.3d 773
 Thomas J. MORIARTY, Trustee of the Local Union No. 727
I.B.T. Pension Trust and of the Teamsters Local
Union No. 727 Health and Welfare Fund,
Plaintiff-Appellant,
v.
LARRY G. LEWIS FUNERAL DIRECTORS LTD. and Leyden Livery
Service, Inc., Defendants-Appellees.
 No. 97-3894.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 1, 1998.
Decided July 29, 1998.
 
 David S. Allen (argued), Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for Plaintiff-Appellant.
 Alex V. Barbour (argued), Bates, Meckler, Bulger & Tilson, Chicago, IL, for Defendants-Appellees.
 Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Pension and health coverage through multi-employer plans is expensive--for the Teamsters' funeral industry plan in Chicago, about $7,000 per employee per year. Many firms therefore seek to limit coverage to the employees closest to retirement or at greatest risk of illness. Pension and welfare funds resist such efforts to leave them saddled with the bad risks, shorn of contributions from younger and healthier persons. In a series of cases we have held that a particular firm's employees must be in or out as a (bargaining) unit, if the collective bargaining agreements and ERISA plans so provide. Central States Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir.1989) (en banc); Central States Pension Fund v. Joe McClelland, Inc., 23 F.3d 1256 (7th Cir.1994); Central States Pension Fund v. Central Cartage Co., 69 F.3d 1312 (7th Cir.1995). The funeral-industry funds believe that Larry G. Lewis and his daughter Gina Lewis are playing a corporate shell game to secure coverage for themselves but not their employees. By this suit the Funds demand access to the corporate books for an audit (and any additional contributions warranted in light of the audit's findings).
 
 
 2
 According to the complaint, whose allegations we must accept, Larry and Gina Lewis worked as funeral directors at Cuneo-Columbian Funeral Home, Inc., until October 1993, when Larry's sister Ann Cuneo, the head of Cuneo-Columbian, fired them. The two Lewises went into business for themselves, establishing Larry G. Lewis Funeral Directors Ltd. (LGLFD), which joined the Funeral Directors Services Association of Greater Chicago (FDSA). The FDSA, a multi-employer association, has a collective bargaining agreement with Local 727 of the Teamsters Union. LGLFD accepted these agreements and began making pension and welfare contributions on behalf of the two Lewises, its only employees. But the business did not flourish; during its year of operation it took in only $12,000, less than it owed the Funds for the Lewises' fringe benefits, and it ceased operations before the end of 1994. But it made pension and welfare contributions anyway, apparently financed out of Larry Lewis's pocket (though LGLFD remitted the money to the Funds).
 
 
 3
 In April 1995 the Lewises rejoined Cuneo-Columbian. Leyden Livery, Inc., took over LGLFD's accounts payable--a category that apparently included only its pension and welfare contributions. An exchange of letters states that Leyden Livery was lending this money to LGLFD until it could get back on its feet, but the "loan" is not evidenced by a note and LGLFD never attempted to resuscitate its business. Understood most favorably to the Funds, this step effectively merged LGLFD into Leyden Livery, a corporation that nominally provided hearse services to Cuneo-Columbian. We say nominally because, according to the complaint, Leyden Livery has no salaried employees and uses the same address, telephone number, and ownership as Cuneo-Columbian. Since January 1995 Leyden Livery has sent pension and welfare contributions to the Funds on behalf of Larry and Gina Lewis; no money has been remitted on behalf of any other employee of Cuneo-Columbian. At the end of April 1995 Larry Lewis became the sole owner of Cuneo-Columbian and Leyden Livery. LGLFD was dissolved by Illinois on June 1, 1996, for failure to pay its corporate franchise taxes.
 
 
 4
 Each month the pension and welfare plans send "remittance reports" preprinted with the name of the employer and the covered employees. Employers correct, sign, and return the forms, with payment. The employer identified on these reports is "Larry G. Lewis Funeral Directors, Ltd."; its address is Cuneo-Columbian's; the checks accompanying the reports are drawn on the account of Leyden Livery; and most reports are signed by Gina R. Lewis immediately below this language:
 
 
 5
 I hereby certify that the information contained in this report is true and correct, and hereby agree to accept and abide by the terms of the Trust Agreement of the Pension Plan, Local 727, I.B. of T., and by the terms of the applicable Local 727, I.B. of T., Labor Agreement, and any amendments.
 
 
 6
 The Welfare Fund's report has an equivalent statement, with its name substituted for the Pension Plan's. These certifications assure the Funds that the contributions are lawful--for no employer may contribute to a union pension plan without a "written agreement" under § 302(c)(5)(B) of the Labor-Management Relations Act, 29 U.S.C. § 186(c)(5)(B).
 
 
 7
 Plaintiffs failed to persuade the district judge to let the case get past the pleading stage. The judge ultimately denied the Funds leave to file the second version of their proposed second amended complaint--ruling that new allegations did not cure its predecessors' legal problems--and then dismissed the first amended complaint under Fed.R.Civ.P. 12(b)(6). That is why the caption of this opinion has only LGLFD and Leyden Livery as defendants; Cuneo-Columbian was not added as a defendant until the second amended complaint. But we have recited the facts alleged in that document, because it was the one whose legal sufficiency the district judge evaluated. Proceedings would have been cleaner had the district judge allowed its filing and then dismissed it, rather than evaluating the second amended complaint while dismissing the first.
 
 
 8
 The judge gave two reasons why, in his view, the second amended complaint is deficient. First, the judge thought that the court lacks jurisdiction to the extent the complaint contends that Larry and Gina Lewis are in the same bargaining unit as other employees of Cuneo-Columbian, and that contributions therefore must be made on behalf of all. Only the National Labor Relations Board can decide which employees belong in what bargaining unit, the judge stated. Second, the "proposed complaint alleges only that plaintiff [sic] continued to contribute on behalf of Lewis' former employees, not that it agreed to adopt the agreement for all of its employees. As such, plaintiff's claim that defendant owes contributions for employees that never worked for Lewis is futile." In a later ruling the judge added that the Funds "may not bootstrap liability for all employees because Cuneo-Columbian continued to make contributions for LGLFD's former employees."
 
 
 9
 The second reason supposes that an employer may choose on whose behalf it will make contributions, despite all-or-none clauses in collective bargaining agreements and ERISA plans. Gerber Truck Service, Joe McClelland, and Central Cartage, none of which the district judge mentioned, show that employers lack this option. Gerber held that even an explicit side agreement between the employer and the local union that pension and welfare contributions would be made for only three members of the bargaining unit was unenforceable against the plans. It follows directly that defendants' private intention to limit coverage to the Lewises is irrelevant. Any particular employer is bound by the collective bargaining agreement (and thus obliged to contribute on behalf of all employees covered by the agreement) or it is not; there is no middle ground. As for the district court's first reason: we don't perceive its relevance to a suit under the collection provision of ERISA, 29 U.S.C. § 1132(e)(1). No employee wants to change bargaining representatives (or decertify a union); no one contends that an unfair labor practice has been committed; the NLRB therefore has no role to play. The Funds' claims are based on contracts rather than principles of labor law. Sometimes it is hard to tell whether a particular firm is a party to the contract; that is the problem this case poses, and it may be resolved without regard to the NLRB's principles of unit determination. (The district judge's oral remarks suggest a related reason: that because Larry and Gina Lewis are the only members of Local 727 at Cuneo-Columbian, they are the only ones for whom contributions must be made. That is not so; labor agreements cover whole bargaining units, not just union members, and union membership plays no role in the administration of multi-employer pension and welfare funds under ERISA. See 29 U.S.C. § 158(a)(3); Joe McClelland, 23 F.3d at 1258.)
 
 
 10
 To say that the district court's understanding is wrong is not to say that the Funds' understanding is right. The Funds suppose that, by making contributions on behalf of the Lewises, their employer (whatever firm that turns out to be) became obliged to contribute on behalf of all other similarly situated employees. That is not necessarily true; maybe no extant employer (recall that LGLFD is defunct) has accepted the collective bargaining agreement. If so, the contributions made on the Lewises' behalf are unlawful for lack of a written contribution agreement ( § 302(c)(5)(B)) and must be returned, and the pension credits to the Lewises' accounts canceled. Only employees of firms covered by the collective bargaining agreement are eligible to participate in the Funds; if at the end of 1994 the Lewises left that category, then their efforts to deceive the Funds into providing coverage for two ineligible persons do not cause additional ineligible persons at Cuneo-Columbian to become covered.
 
 
 11
 According to the complaint and the attached contribution reports, the contributions during 1995 were made on behalf of LGLFD, although the checks were drawn against Leyden Livery's bank account. None of the reports contains the name of Cuneo-Columbian, and the fact that Leyden Livery supplied the money does not necessarily subject it to the collective bargaining agreement, any more than a bank would have become a party had it lent the funds to LGLFD. Leyden Livery certainly was not the Lewises' employer; they are funeral directors, not hearse drivers or pallbearers, and as of January 1995 their employer was Cuneo-Columbian. Thus the most likely conclusion, given what the complaint reveals, is that all contributions made since LGLFD ceased operations are unlawful because thereafter neither Lewis was an employee of LGLFD, neither was covered by the collective bargaining agreement, and the contribution reports were false. On this understanding Cuneo-Columbian owes nothing and the payments Leyden Livery made must be returned. The Lewises will lose credits toward their pension coverage but may be required to make restitution to the welfare fund for the insurance coverage it has supplied as the result of their deceit.
 
 
 12
 But Rule 12(b)(6) does not permit a court to follow the path that seems "most likely" on the basis of the complaint. A complaint may not be dismissed unless it is impossible to prevail "under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); see also, e.g., Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); American Nurses' Ass'n v. Illinois, 783 F.2d 716, 727 (7th Cir.1986). It would be consistent with the Funds' allegations to show that Gina Lewis signed the 1995 contribution reports, not as agent of the defunct LGLFD, but on behalf of Cuneo-Columbian, and thus pledged it to implement the collective bargaining agreement and ERISA documents. Perhaps discovery would enable the Funds to establish that either Ann Cuneo or Larry Lewis, the owners of Cuneo-Columbian during 1995, authorized Gina Lewis to sign as its agent. Both § 302(c)(5)(B) and general principles of contract law permit an employer to adopt a collective bargaining agreement by a course of conduct plus a writing such as the certification line on the contribution report; a signature at the bottom of the collective bargaining agreement itself is unnecessary. See Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370 (7th Cir.1985).
 
 
 13
 Or perhaps a trier of fact could conclude that Gina Lewis signed as an agent of Leyden Livery, but that Leyden Livery and Cuneo-Columbian must be treated as a single employer because they have an integrated labor force, disregard corporate formalities, and have tried to use separate corporate shells to hoodwink the Funds. Cf. Sharpe v. Jefferson Distributing Co., 148 F.3d 676 (7th Cir.1998); Sea-Land Services, Inc. v. Pepper Source, 941 F.2d 519 (7th Cir.1991). Still a third possibility is that Leyden Livery (and thus potentially Cuneo-Columbian) effectively merged with LGLFD, acquiring its assets and liabilities--including its collective bargaining agreement. Although it does not seem likely that the absorption of two employees into a larger unit would cause the surviving firm to be deemed a "successor" bound by the agreement, see NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); U.S. Marine Corp. v. NLRB, 944 F.2d 1305 (7th Cir.1991) (en banc), the complaint does not tell us how many other employees of Cuneo-Columbian might be covered by the collective bargaining agreement with Local 727. Until discovery (or perhaps an ERISA audit of Cuneo-Columbian's books), the possibility of successorship cannot be ruled out, and the complaint therefore cannot be dismissed under Rule 12(b)(6).
 
 
 14
 Defendants contend that the Funds pleaded themselves out of court when their first amended complaint alleged that Gina Lewis signed the contribution reports on behalf of LGLFD. If that had been the Funds' last word, they would be in trouble, but the second amended complaint replaced this assertion with the allegation that Gina Lewis was "an authorized agent of Cuneo-Columbian and Leyden Livery". Neither allegation has priority; inconsistent pleading is permitted. Fed.R.Civ.P. 8(e)(2). Litigants who must frame their claims before obtaining discovery often find it necessary to conform their theories to the facts as time goes on. Abandoned theories fall by the wayside, Lubin v. Chicago Title & Trust Co., 260 F.2d 411, 413 (7th Cir.1958). An allegation of this kind can't sensibly be called an "admission"; it is a characterization of (or perhaps just a speculation about) what evidence unknown to the pleader may show. Although a superseded pleading sometimes may be offered as evidence, compare DePaepe v. General Motors Corp., 141 F.3d 715, 719 (7th Cir.1998), with Nisbet v. Van Tuyl, 224 F.2d 66, 71 (7th Cir.1955), a false step early in a case does not blot out the opportunity to prevail on a claim that is sound factually and legally. Whether the Funds' claim is sound remains to be determined, perhaps on summary judgment, but only after an opportunity for discovery.
 
 
 15
 REVERSED AND REMANDED.