Frank SAVINO, on behalf of himself and all others similarly situated, Plaintiff–Appellant–Cross–Appellee,

v.

COMPUTER CREDIT, INC., Defendant–Appellee–Cross–Appellant.

Docket No. 98–7179.

United States Court of Appeals, Second Circuit.

Argued Sept. 17, 1998.

Decided Dec. 21, 1998.

Before: CABRANES and POOLER, Circuit Judges, and TRAGER, District Judge.[1]

POOLER, Circuit Judge:

In this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692 *et seq.,* plaintiff Frank Savino appeals from two orders of the United States District Court for the Eastern District of New York (Spatt, *Judge*) that, collectively, denied his motion for class certification and significantly reduced the amount of attorney's fees that he requested. Defendant Computer Credit, Inc. cross-appeals from the district court's grant of summary judgment to Savino on his FDCPA claim, award of statutory damages and attorneys fees, and denial of sanctions against Savino and his attorney. We vacate the judgment only insofar as it ordered the payment of reduced attorney's fees and remand the matter to the district court for reconsideration of that issue. We affirm in all other respects.

## BACKGROUND

Appellant Frank Savino is a resident of Hauppage, New York. Computer Credit, Inc. ("CCI") is a debt collection agency with a principal place of business in Winston–Salem, North Carolina. On August 28, 1995, CCI sent Savino a letter regarding $153.00 he owed to North Shore Hospital in Manhasset, New York. The letter lacked the "validation notice" that Section 1692g of the FDCPA requires debt collectors to send to consumers within five days of an initial communication, advising the consumer of his rights under the statute. *See* 15 U.S.C. § 1692g(a).

In a complaint dated October 22, 1995, Savino alleged that CCI's August 28 letter— "the *first* and only letter" he claimed to have received from CCI regarding the alleged debt—violated the FDCPA because, among other things, it failed to contain the required debt validation notice. Savino brought the case as a class action, on behalf of "all consumers within the State of New York who within one year prior to the filing of this

Scott N. Gelfand, New York, NY, for Appellant

Robert L. Dougherty, Garden City, NJ, for Appellee.

action received letters from the Defendant regarding alleged delinquent debts for medical services in violation of the FDCPA."

In its answer, CCI alleged that it mailed an initial debt collection letter to Savino dated August 14, 1995, which contained the debt validation notice required by the statute. The August 14 letter stated, in part:

This notice will serve to inform you that your overdue balance with North Shore Hospital has been referred to Computer Credit, Inc. The hospital insists on immediate payment or a valid reason for your failure to make payment.

Below the body of the letter, CCI advised Savino, "PLEASE SEE IMPORTANT NOTICE ON BACK." The validation information required by Section 1692g was set forth on the back of the notice.

In a letter dated March 28, 1996, counsel for CCI wrote to Savino's attorney, advising him that under New York law, because CCI mailed the August 14, 1995, letter in the regular course of business, Savino was presumed to have received it. On this basis, CCI sought Savino's discontinuance of the action and advised that if Savino pursued the action, CCI would seek attorney's fees under the FDCPA.

Although he continued to deny receipt of the August 14, 1995, letter, Savino sought leave to amend his complaint to allege that "[u]pon information and belief, CCI mailed an earlier letter to Savino, dated August 14, 1995, which was the first communication by CCI to Savino or, at least, CCI's first letter to Savino." Savino alleged that although this letter contained the requisite debt validation notice, it nevertheless violated the FDCPA because the letter's demand for "immediate payment" overshadowed the validation notice. The magistrate judge permitted the proposed amendment. Thereafter, at a conference with the magistrate judge, Savino agreed to voluntarily discontinue his claim regarding the August 28, 1995, letter.

CCI moved for summary judgment dismissal of the complaint, and Savino cross-moved for partial summary judgment. After CCI served its motion papers, the magistrate judge granted Savino's motion for leave to amend his complaint a second time, this time to include a statement that he "*received* a letter from the defendant dated August 14, 1995" (emphasis added). The second amended complaint alleged that "[w]hile Savino, initially, did not recall receiving the letter, he has accepted CCI's repeated representations that such letter was, in fact, sent, and, as well, admits that he is presumed to have received the letter as a matter of law."

This second amendment apparently came shortly after Savino's deposition, at which he testified that he did receive the August 14 letter. Savino testified, in part:

Q: Is it fair to say that in your prior testimony that you believe that you received an August 14, 1995 letter from CCI, addressed to you?

A: Yes, I believe, yes. . . .

Q: Any statement that you did not receive the August 14, 1995 letter from CCI would be false, according to your recollection, your best recollection?

A: Yes.

On April 11, 1997, the district court denied CCI's motion for summary judgment and granted Savino's cross-motion for partial summary judgment, finding that the August 14, 1995, letter violated the FDCPA because the language in the letter demanding "immediate payment" contradicted the language of the 30–day debt validation notice and thus was misleading to consumers. *See Savino v. Computer Credit, Inc.*, 960 F.Supp. 599, 604 (E.D.N.Y.1997).

In May 1997, Savino moved for class certification. CCI opposed the motion, arguing that plaintiff's counsel's "egregious misrepresentations" to the court regarding receipt of the August 14 letter and his failure to conduct appropriate discovery made Savino an inadequate class representative. The district court concluded that Savino was an inappropriate class representative and denied his motion for class certification. *See Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 357 (E.D.N.Y.1997).

Thereafter, Savino moved for an award of statutory damages under the FDCPA; $39,-265.49 in attorney's fees; and $316.74 in disbursements. CCI cross-moved for sanctions

and attorney's fees. The district court awarded Savino $500.00 in statutory damages, $3,675.00 in attorney's fees, and $120.00 in costs and denied CI's cross-motion for sanctions and attorney's fees. *See Savino v. Computer Credit, Inc.*, 990 F.Supp. 159, 170–71 (E.D.N.Y.1998).

Savino appeals from the district court's orders denying his motion for class certification and substantially reducing the amount of attorney's fees requested. CCI cross-appeals from the orders denying its motion for summary judgment; granting Savino's motions for summary judgment, statutory damages, and attorney's fees; and denying its requests for sanctions and attorney's fees.

## DISCUSSION

### I. Summary judgment on FDCPA claim

▆ When an independent debt collector solicits payment from a consumer, it must—within five days of the initial communication—provide the consumer with a detailed validation notice which includes the following information:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). When determining whether Section 1962g has been violated, courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir.1996) (citing, *inter alia, Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993)). "When a notice contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act." *Id.* (citing *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991)). "[T]he juxtaposition of two inconsistent statements renders the notice invalid under § 1692g." *Id.* A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights. *See id.* at 35.

▆ The district court concluded that CCI's claim that "the hospital demands immediate payment" contradicted the validation notice on the reverse. *Savino*, 960 F.Supp. at 604. CCI argues that the district court erred in failing to construe the language in its proper context as part of a larger sentence that read, "The hospital insists on immediate payment *or a valid reason for your failure to make payment*" (emphasis added). CCI argues that because this sentence allowed the consumer to tender a reasonable excuse as an alternative to immediate payment, the notice did not violate the statute.

In light of this Court's precedent, including *Russell*, we conclude that CCI's payment notice violates the FDCPA because the language on the front of the notice, when read in conjunction with the statutory debt validation on the reverse side, would "make the least sophisticated consumer uncertain as to her rights." *See Russell*, 74 F.3d at 35.[2] In reaching this conclusion, we emphasize that

---

2. Moreover, in *Russell*, the instruction to the consumer to read the validation notice on the reverse side of the payment notice was contained in the body of the notice itself, whereas the instruction "PLEASE SEE IMPORTANT NOTICE ON BACK" in CCI's letter appeared at the bottom of the payment notice, beneath the signature of the director of operations. [JA 42] The placement of this instruction outside the body of the letter arguably made the instruction less helpful than the one in *Russell*.

CCI's request for immediate payment did not, standing alone, violate the FDCPA. Rather, CCI's violation of the Act consisted of its decision to ask for immediate payment without also explaining that its demand did not override the consumer's rights under Section 1962g to seek validation of the debt. CCI could have both sought immediate payment and complied with the Act simply by inserting into the text of its letter transitional language that referred the addressee to the validation notice. For example, CCI might have added one of the following paragraphs to its demand letter:

> Although we have requested that you make immediate payment or provide a valid reason for nonpayment, you still have the right to make a written request, within thirty days of your receipt of this notice, for more information about the debt. Your rights are described on the reverse side of this notice.

> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of this notice. If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you. Your rights are described on the reverse side of this notice.

In our view, the inclusion of this or similar language would effectively inform a consumer as to his or her rights under the FDCPA without imposing an undue burden on a debt collector's legitimate efforts to obtain the prompt payment of debts.

CCI further argues that even if the notice violated the statute, the fact that Savino denied receipt of the August 14, 1995, letter precludes a finding in his favor because a consumer's receipt of a collection letter is an "absolute prerequisite" to a claim for damages under the FDCPA. Savino contends that because the FDCPA is a strict liability statute, his receipt of the letter is not a necessary predicate to a finding of liability. We need not resolve this issue because Savino acknowledged, albeit belatedly, receipt of the August 14 letter.

## II. District court's award of statutory damages

■■■ CCI also argues that the district court erred in awarding Savino statutory damages in the amount of $500.00. The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court. *Clomon v. Jackson*, 988 F.2d at 1322. All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997) (where plaintiff seeks statutory damages and not actual damages, penalty "does not depend on proof that the recipient of the letter was misled"). The district court must "consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors in deciding the amount of any 'additional damages' awarded." *See* 15 U.S.C. § 1692k(b)(1); *Clomon*, 988 F.2d at 1322. In concluding that Savino was entitled to an award of $500.00, the district court noted its conclusion that the August 14 letter violated the FDCPA but also found that the notice was not threatening or abusive in tone. *Savino*, 990 F.Supp. at 166. In addition, the court found that there was no evidence that CCI's noncompliance was intentional. *Id.* Because the district court's stated reasons for its award of statutory damages comport with *Clomon*, the court did not abuse its discretion in its award to Savino.

## III. Denial of class certification

■■■ Fed.R.Civ.P. 23 provides that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative

parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff. *Kline v. Wolf*, 702 F.2d 400, 402–03 (2d Cir.1983) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). We review the district court's decision whether to certify a class for an abuse of discretion. *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).

■ In this case, the district court concluded that Savino satisfied the first three requirements of Rule 23(a) but that he was not an adequate representative of the class because he repeatedly changed his position as to whether he received the August 14, 1995, letter. *See Savino*, 173 F.R.D. at 356–57. Savino argues that the district court erred in denying class certification on this basis because he adequately explained the perceived inconsistencies in his position. He further argues that even if his pleadings and testimony were contradictory, the inconsistencies related to collateral matters and thus did not justify the denial of class certification.

The fact that Savino offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial. The district court was in the best position to assess the potential impact on the class plaintiffs of this change in position. Accordingly, we conclude that the court's denial of Savino's motion to certify the class did not constitute an abuse of discretion.

## IV. Savino's request for attorney's fees

■ Savino argues that an award of fees was mandatory in this case because he was a prevailing party within the meaning of the FDCPA. He further argues that the lodestar calculation in his fee request was reasonable and that the district court abused its discretion in reducing the amount of his requested fee award by 90 percent without setting forth a basis for doing so, effectively punishing him for his perceived improper conduct during the course of this litigation. CCI argues that Savino should not be award-

ed any attorney's fees whatsoever because he achieved only a minimal degree of success and because he and his attorney engaged in misconduct. In the alternative, CCI argues that if fees were required by FDCPA, the district court properly reduced the requested fee, which was "based on gross exaggeration and inefficiency."

■ A consumer who brings a successful FDCPA lawsuit can recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Where a plaintiff prevails, whether or not he is entitled to an award of actual or statutory damages, he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court. *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir.1989); *Emanuel v. American Credit Exch.*, 870 F.2d 805, 809 (2d Cir.1989).

■ Savino submitted billing records for approximately 187 hours of attorney time at a rate of $225.00 per hour for Scott Gelfand and $150.00 per hour for his associate, Rhonda Kravetz, for a grand total of $39,265.49. The district court reduced the hourly rate for Gelfand to $200.00 per hour and for Kravetz to $135.00 per hour, concluding that these rates were in line with others recently awarded in the Eastern District. *Savino*, 990 F.Supp. at 169–70. This reduction to comport with the reasonable fee in the district was not an abuse of discretion. *See Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994).

However, the district court reduced the number of compensable hours without providing an adequate explanation of its reasons for doing so. Because the court concluded after a review of the billing records that much of the time billed was "devoted to the plaintiff's inconsistencies" concerning receipt of the August 14 letter, it reduced the number of billable hours to fifteen for Gelfand and five for Kravetz. *Savino*, 990 F.Supp. at 170. Although the court may have been troubled by Savino's inconsistencies, its failure to explain its specific methodology and rationale supporting the substantial reduc-

tion in the number of compensable hours was error. *See Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir.1997) (citing cases). "Whenever the district court augments or reduces the lodestar figure it must state its reasons for doing so as specifically as possible." *Id.* (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir.1985)). If the trial court fails to offer an explanation for its fee award, the court of appeals "will remand for findings and an explanation." *Id.* Accordingly, we remand to the district court for reconsideration of this issue, with instructions to the court to provide specific reasons for its calculation of attorney's fees, particularly for any decision to set the number of compensable hours at a figure lower than that sought by Savino.

## V.   CCI's motion for sanctions and attorney's fees

■■■■■ An attorney who signs a pleading, motion, or other paper certifies that she has made a reasonable inquiry and that to the best of her knowledge, information, and belief, (1) the pleading is not filed for any improper purpose; (2) any claims or defenses have support in existing law or in a non-frivolous argument for a change in existing law; (3) there is current or likely future evidentiary support for all evidentiary contentions; and (4) denials are warranted either by the evidence "or, if specifically so identified, are reasonably based on a lack of information or belief." Fed.R.Civ.P. 11(b). "[S]anctions imposed for violations of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed.R.Civ.P. 11(c)(2). In considering whether to impose sanctions based on the lack of evidentiary support for an attorney's factual contentions, the district court must direct its inquiry at ascertaining the attorney's knowledge and conduct at the time the pleading in question was signed. *Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 625 (2d Cir.1991).

The imposition of sanctions and the determination of the amount of the sanctions are matters left to the district court's discretion and are not to be disturbed absent an abuse of that discretion. *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994) (noting that "the district court, which is familiar with the issues and litigants, is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11") (internal quotation omitted).

■■■■ In this case, the district court stated:

the Court, in its exercise of discretion, declines to impose sanctions, although it believes that the question is a close one and the Court is troubled by the plaintiff's contradictory assertions in regard to the receipt and reading of the August 14, 1995 letter. However, bearing in mind that the primary goal of Rule 11 sanctions is the "deterrence of baseless filings and the curbing of abuses," and that sanctions should be imposed with caution, the Court believes that sanctions are unwarranted, especially since the plaintiff ultimately prevailed on the merits of his claim. Accordingly, the defendant's motion for sanctions and attorney's fees pursuant to Rule 11 is denied.

*Savino*, 990 F.Supp. at 165. In opposition to the motion for sanctions, Savino provided an affidavit in which his counsel detailed the pre-filing inquiry into the facts forming the basis for Savino's allegation that he had not received any letter prior to the August 28, 1995, letter. Because Savino's counsel documented reasonable inquiry into the allegations in the complaint, the fact that Savino's deposition testimony later contradicted those allegations does not rise to the high threshold necessary for the imposition of sanctions under Rule 11, and the district court's decision in this regard was not an abuse of discretion.[3]

---

3. To the extent that CCI's argument can be construed as an argument for attorney's fees under FDCPA, we note that the statute provides for such an award only "[on] a finding ... that an action ... was brought in bad faith and for the purpose of harassment." *See* 15 U.S.C.

§ 1692k(a)(3). The fact that Savino ultimately succeeded on his claim undermines any contention that he brought this action in bad faith and for the purpose of harassment, and CCI makes no compelling argument to the contrary.

## CONCLUSION

We vacate the judgment only as to the award of attorney's fees, and we remand to the district court for further findings on this issue. We have considered the parties' remaining arguments and find them unpersuasive. The judgment is affirmed in all other respects.

Costs to appellant.