Lenora JOHNSON, Plaintiff–Appellant,

v.

REVENUE MANAGEMENT
CORPORATION, et al.,
Defendants–Appellees.

Brendt Wollert, Plaintiff–Appellant,

v.

Client Services, Inc., Defendant–Appellee.

Nos. 98–3001, 98–3146.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22 and 26, 1999.

Decided March 1, 1999.

Daniel A. Edelman, Michelle R. Teggelaar (argued), Edelman & Combs, Chicago, IL, for Lenora Johnson.

Michael Dockterman, Jennifer K. Walter (argued), Wildman, Harrold, Allen & Dixon, Chicago, IL, for Revenue Management Corporation.

Daniel A. Edelman, James O. Latturner (argued), Edelman & Combs, Chicago, IL, for Brendt Wollert.

Joseph M. Eichberger (argued), McSherry & Associates, Chicago, IL, for Client Services, Incorporated.

Before ESCHBACH, EASTERBROOK, KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.*

EASTERBROOK, Circuit Judge.

Within five days after a debt collector first duns a consumer debtor, the collector must send a notice saying, among other things, that unless the debtor "disputes the validity of the debt" within 30 days the debt collector will assume that the debt is valid, but that if the debtor notifies the collector in writing within 30 days that he is disputing the debt then "the debt collector will obtain verification of the debt [from the creditor] ... and a copy of [the] verification ... will be mailed to the consumer." 15 U.S.C. § 1692g(a)(1)-(4). *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir.1997), holds that this section, part of the Fair Debt Collection Practices Act, also obliges the collector to refrain from confusing the debtor by undercutting the required notice or implying a different obli-

---

* Judges Eschbach, Easterbrook, and Evans are the panel in No. 98–3001, which was argued on January 26, 1999. Judges Easterbrook, Kanne, and Diane P. Wood are the panel in No. 98– 3146, which was argued on January 22, 1999. The common subject matter of the two appeals has led the two panels to issue a single opinion.

gation. Accord, *Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir.1998). An unelaborated demand that the debt be paid "immediately" (or, as in *Bartlett*, "within one week"), or a threat of immediate suit, violates the Act by implying that the debtor does *not* have 30 days to ask for verification—or at least could convey this message to an unsophisticated consumer, the kind to whom the Act is addressed, see *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254 (7th Cir.1994), unless accompanied by additional reconciling language, such as that payment is due "immediately" only when the debt is uncontested. For the Act's notice-and-verification requirement covers only those claims that are contested or reasonably contestable; *bona fide* debts that are overdue are, well, overdue, and payable pronto. Moreover, the creditor is entitled to file suit whenever it chooses, though progress in the suit may be delayed by verification. *Bartlett* suggests language that would help an unsophisticated reader see how a demand for swift payment of acknowledged debts may be reconciled with a 30–day period to request verification of the debt collector's claims.

Two collection agencies sent letters that gave rise to the class-action suits that we have consolidated for decision today. Both letters contained a paraphrase of the statutory notice. The letter to Lenora Johnson added:

> If you fail to make prompt payment we will have no alternative but to proceed with collection, which may include referring this account for legal action or reporting this delinquency to the credit bureau.
>
> Should you wish to discuss this matter, contact our office and ask for extension 772.

The letter to Brendt Wollert related:

> The above account has been placed with our firm for payment in full.
>
> Call our office immediately upon receipt of this letter. Our toll free number is 1–800–521–3236.

Neither letter attempted to explain how a demand for "prompt" or "immediate" action could be reconciled with the statutory 30–day period. Each letter led to a suit contending that a demand for "prompt" payment or an "immediate" call would confuse unsophisticated recipients about their statutory rights; Wollert adds that the request to "call immediately" laid a snare because some unsophisticated consumers would think that they could obtain verification by a phone call, while the Act specifies that the request must be written.

Judge Lindberg, presiding in *Johnson*, issued a one-page order dismissing the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief may be granted. He concluded that a demand for "prompt payment" neither "contradicts" nor "overshadows" the statutory disclosures and therefore cannot violate the Act. Judge Shadur, to whom *Wollert* was assigned, issued an order before the debt collector answered the complaint requiring Wollert's lawyers to file a list of supporting citations. The order forbade any elaboration. After receiving the list, Judge Shadur wrote that "[a]ll of the authorities sought to be adduced by plaintiff's counsel in their client's favor involve variants totally unlike what is at issue here" and concluded that "this kind of lawsuit and others like it [serve] as examples of the [class action's] potential for abuse. As a long-time staunch proponent both of the class-action concept as such and of its appropriate utilization in situations where (for example) a major disparity in resources or in staying power might otherwise cause legitimate grievances to be lost for reasons unrelated to their merits, this Court decries the institution of actions such as this one." 1998 U.S. Dist. LEXIS 12241, 1998 WL 474118 at *2 (N.D.Ill. 1998). Later Judge Shadur dismissed the complaint; the order did not specify the subsection of the civil rules involved.

 Neither of these decisions is tenable: Judge Lindberg used the wrong legal standard, and Judge Shadur used an inappropriate procedure. Rule 12(b)(6) should be employed only when the complaint does not present a legal claim. A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6). See *Bennett v. Schmidt*, 153 F.3d 516 (7th Cir. 1998). Such a claim may fail on the facts, but assessing factual support for a suit is not the office of Rule 12(b)(6). Moreover, as we observed in *Bartlett*, although many opinions

inquire whether language in a dunning letter "contradicts or overshadows" the statutory notice, these words are not themselves the applicable rule of law; a court must inquire whether the letter is confusing. 128 F.3d at 500–01. Language that contradicts or overshadows the statutory notice may make a letter confusing, but to say that these are *sufficient* means of showing confusion is not to say that they are *necessary*. "A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is a third, the failure to explain an *apparent* though not actual contradiction". *Id.* at 500 (emphasis in original). The district court in *Johnson* never asked whether "the failure to explain an *apparent* though not actual contradiction" between the demand for an "immediate" call and the 30 days to give written notice made the letter confusing. As for *Wollert*: the district judge effectively dismissed the case on the pleadings under Fed.R.Civ.P. 12(c), but without using the procedures that rule prescribes. A judge should not rebuff a litigant's effort to supplement the complaint or provide legal argument in support of the suit. Because complaints need not articulate legal theories, see *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir.1992), and because the skeletal presentation in a notice pleading may be fleshed out later, a decision without giving plaintiff the opportunity to argue or augment his position is premature.

■ The two dispositions in the district court share an additional assumption: that whether a dunning letter is "confusing" is a question to be answered solely by applying the rules of logic to the text of the letter. But why should that be so? As we noted in *Bartlett*, a letter may confuse even though it is not internally contradictory. Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade. To learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence. A concurring opinion in *Gammon* suggested that this evidence might include the kind of surveys used to measure confusion in trademark cases. 27 F.3d at 1260.

■ If all the plaintiffs have to go on is the language of these letters, they must lose in the end. Plaintiffs' apparent belief that *Bartlett* requires explanatory language is wrong: an explanation may prevent confusion from arising, but when one is missing the factual question remains. Did the letter confuse its recipients—and confuse them about the statutory entitlements, not just about what words such as "prompt" mean in the abstract. If the letter effectively advises the consumer about the statutory entitlements, then the Act has been satisfied.

■ At oral argument counsel for Johnson and Wollert said that they do not plan to rest on the bare language of the letters but want to introduce additional evidence. As in trademark cases, where confusion is an issue of fact rather than law, see *Reed–Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 912 (7th Cir.1996); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir.1985), they are entitled to do so, and to receive relief if on a more complete record the trier of fact concludes that the letters are sufficiently confusing that unsophisticated consumers fail to understand their rights. As in trademark cases, it will be necessary to show that the additional language of the letters unacceptably *increases* the level of confusion; many unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice. (That's what it means to call them "unsophisticated.")

■ Just as surveys in trademark cases attempt to measure the level of consumer confusion between products with distinctively different names and packages, see *Reed–Union*, 77 F.3d at 912, so a survey (or other empirical evidence) under the Fair Debt Collection Practices Act would be useful only if it included a benchmark measure of consumers' understanding after reading the unelaborated statutory notice plus a statement of the debt, or perhaps after reading the *Bartlett* safe-harbor letter. Cf. *Gacy v. Welborn*, 994 F.2d 305, 311–14 (7th Cir.1993) (stressing the need to know the basal level of confusion that ensued from well drafted instructions before assessing an argument that jury instructions

are too labyrinthine). If the actual letter does less well than the benchmark at conveying the statutory information, a judge would have to decide—again just as in trademark litigation—whether the increase in confusion is excessive.

Defining the limits of acceptable confusion may tax both the patience and capacity of the courts, but it is essential if there is to be an anti-confusion norm (as opposed to a rule limited to a prohibition of logical contradiction). Our defendants do not take issue with the many cases, in and out of this circuit, that read the Act as condemning bewildering debt collection letters, and these plaintiffs therefore are entitled to show, if they can, that the letters they received are confusing.

Judges may think it wise to ask the parties to subject the results of surveys to a reality check. What proportion of the debtors who receive the "call immediately" letter place a phone call, make an oral request for verification, and then learn that they have missed the 30-day deadline for a *written* request? A high proportion would indicate that the written word is confusing; a low proportion would undercut plaintiffs' claims. Of course, what happens after a call depends in part on what happens during the call. Do the phone representatives invariably initiate the verification process on an oral request? If they do, that would pull the sting from Wollert's claim that the letter is designed to trick debtors into surrendering their verification rights; but the record does not tell us what happens when a debtor makes an oral rather than a written request. For unsophisticated consumers a careful oral explanation may be more helpful than a lengthy and painfully complete written exercise in legalese, so *potential* confusion from the writing would not become *actual* confusion, but we have no idea what the people who take calls at either Revenue Management or Client Services are trained to say. This is not to say that a clear presentation over the phone can change the legal effect of a confusing letter; the Act gives primacy to the written word. But learning what actually happens may help the

court decide whether survey evidence accurately separates clear from confusing letters.

Neither district judge acted on the request that the suits be certified as class actions. This should be the first order of business on remand. Fed.R.Civ.P. 23(c)(1).

Reversed and Remanded.

ESCHBACH, Circuit Judge, concurring.**

Although I agree with the conclusion ultimately reached in this case, I write separately because of two concerns I have with the conclusions of my colleagues. First, I do not believe the court employs the proper formulation of Federal Rule of Civil Procedure 12(b)(6) in reversing Judge Lindberg's decision. The court's opinion here applies Rule 12(b)(6) in a manner inconsistent with the Supreme Court and this circuit's precedent. That application of Rule 12(b)(6) appears to remove nearly all power from the rule. I am also troubled by the court's emphasis on survey evidence and the importance it may have in future Fair Debt Collection Practices Act ("FDCPA") cases.

Federal Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." The district court dismissed Johnson's complaint on that ground. None of this is groundbreaking. Yet, in examining that Rule 12(b)(6) dismissal, this court makes a subtle, yet important change in review of Rule 12(b)(6) dismissals. The Rule 12(b)(6) analysis conducted is brief, and it simply states, "[a] contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under Rule 12(b)(6)," and that "a claim may fail on the facts, but assessing factual support for a suit is not the office of Rule 12(b)(6)." In doing so, the opinion moves away from the longstanding test this court applies in analyzing Rule 12(b)(6) motions—a test set forth by the Supreme Court.

"A court may dismiss a complaint [under Rule 12(b)(6) ] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allega-

** I concur only with regard to the decision in *Johnson v. Revenue Management Corp.*, 98–3001. I was not a member of the panel that heard

*Wollert v. Client Services, Inc.*, 98–3146, and I take no part in that decision.

tions." *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Moriarty v. Larry G. Lewis Funeral Directors Ltd.*, 150 F.3d 773, 777 (7th Cir.1998) (citing *Hishon*); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir.1998) (same); *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir.1998) (same). The majority's statement of what is required of a plaintiff in order to survive a Rule 12(b)(6) motion appears to focus only on the legal theory under which the plaintiff seeks recovery. However, the Supreme Court's test stated in *Hishon* and application of Rule 12(b)(6) in this circuit make it clear that Rule 12(b)(6) requires more than a cursory examination of the theory of recovery a plaintiff offers in his or her complaint.

In *Jang v. A.M. Miller Assoc.*, 122 F.3d 480 (7th Cir.1997), the plaintiff alleged a debt collection agency engaged in false, deceptive, or misleading credit practices by including the required validation notices in dunning letters while never intending to actually validate a debt upon request. Instead, upon receipt of a validation request, the collection agency would return the debtor's file to the original creditor. *See id.* at 482. The district court granted defendant's motion to dismiss under Rule 12(b)(6), and this court affirmed. *See id.* at 484. In doing so, the panel looked not only to the theory of recovery, but the basis behind that theory of recovery. A collection agency does not violate the FDCPA by deciding to not pursue a debtor who seeks validation of a debt. Nor does a collection agency violate the FDCPA by sending the validation information as required by the statute. Because of this, there was no set of facts the plaintiff could have proven upon which relief could have been granted. The panel, correctly, affirmed the 12(b)(6) dismissal of plaintiff's complaint.

Using the Rule 12(b)(6) analysis applied in *Johnson* would lead to a different result in *Jang*. In the same way that Johnson's "contention that a debt collection notice is confusing is a recognized legal claim," so too was Jang's contention that a debt collector engaged in false, misleading, or deceptive credit practices. Applying the test of the *Johnson* majority to Jang's complaint, Rule 12(b)(6) dismissal would have been just as inappropriate in that case as in Johnson's.

This court conducted a inquiry similar to that in *Jang* in reversing a Rule 12(b)(6) dismissal in *Gammon v. GC Services*, 27 F.3d 1254 (7th Cir.1994). The plaintiff in *Gammon* alleged that the dunning letter he received improperly represented that the collection agency authoring the letter was vouched for or affiliated with a governmental agency. Again, that contention is a recognized theory of recovery. Claiming that a collection agency is "vouched for, bonded by or affiliated with" any governmental body is forbidden by the FDCPA. See 15 U.S.C. § 1692e(1). That should have been all that was necessary in order for this court to reverse a Rule 12(b)(6) dismissal of Gammon's claim. Yet, the *Gammon* court's analysis went further than this. The panel examined the language of the letter, not just the contention by the plaintiff, in conducting its analysis.

Turning to the application of Rule 12(b)(6) in Johnson's case, I believe the majority is correct and dismissal pursuant to Rule 12(b)(6) is inappropriate. However, the analysis I use in reaching that decision differs from that of the majority.

The letter in *Johnson* demands "prompt payment." It does not impose a time period for payment that directly conflicts with the thirty days a debtor has to request validation of a debt. *See Bartlett v. Heibl*, 128 F.3d 497, 498 (7th Cir.1997) (finding that clause requiring payment of debt within one week stripped the validation notice of all meaning). The letter does not even seek "immediate" payment. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir.1998) (under "least sophisticated consumer" standard, demand for immediate payment overshadowed the validation notice).

Instead, the letter demands only "prompt" payment. Admittedly, determining a difference between "immediate" and "prompt" is a fine distinction. Still, one exists, and I believe it is one that even the unsophisticated consumer could understand. "Prompt" is commonly used to mean "current" or "on time." "Immediate" has a far more direct meaning. It means "right this second," or "at this very moment." I believe an unso-

phisticated consumer is capable of making and understanding that distinction.[1]

However, I am not persuaded that an unsophisticated consumer would, without a doubt, grasp this subtle distinction. An unsophisticated consumer reading the letter Johnson received is confronted with two pieces of information—the required validation notice giving a debtor thirty days to request validation of his or her debt, and the request for prompt payment. While not necessarily contradictory, those two pieces of information could be confusing to the unsophisticated consumer. Therefore, there is some set of facts upon which the plaintiff could prevail. Rule 12(b)(6) dismissal was then inappropriate, and Judge Lindberg's decision must be reversed.

I am also troubled by the majority's discussion of the use of survey evidence in FDCPA claims. The FDCPA was enacted to protect consumers incurring debts for "personal, family or household purposes." *See* S. Rep. 95–382, *reprinted at* 1977 U.S.C.C.A.N. 1695 (1977). One of the stated purposes of the FDCPA is "to promote consistent State action to protect *consumers* against collection abuses." 15 U.S.C. § 1692(e) (emphasis added). Reading these together, it becomes a fair statement that the FDCPA was passed to protect the common consumer debtor who may not owe much more than one hundred dollars. *See, e.g., Trull v. GC Servs. Ltd. Partnership*, 961 F.Supp. 1199, 1201 (N.D.Ill. 1997) (resulting from collection of $68 debt to record club); *White v. Goodman*, No. 97 C 7078, 1998 WL 850814, *1 (N.D.Ill.Dec. 2, 1998) (resulting from collection of $18 debt to book club); *Epps v. Etan Industries, Inc.*, No. 97 C 8770, 1998 WL 851488, *1 (N.D.Ill. Dec. 1, 1998) (resulting from collection of $27 debt to video store).

Although the majority does not go so far as explicitly requiring survey evidence in analyzing FDCPA claims, the lengthy discussion of the subject in the opinion implies a strong preference for that evidence. I fear this expression of preference will gut the purposes of the FDCPA. Using the majority's analogy, survey evidence in trademark and trade dress cases can be very costly. *See, e.g., Tonka Corp. v. Rose Art Industries, Inc.*, 836 F.Supp. 200, 210 n. 10 (D.N.J.1993) (stating cost of pilot study to be $7,850; noting more extensive survey could increase cost of study by more than $29,000); *Lon Tai Shing Co., Ltd. v. Koch & Lowy*, 19 U.S.P.Q.2d 1081, 1991 WL 170734, *19 (S.D.N.Y. June 20, 1991) (noting cost of conducting proper survey in trademark and trade dress case could exceed $100,000). However, unlike the litigants in trademark and trade dress cases, plaintiffs in FDCPA cases will almost always be typical consumers. Even considering the provision of the FDCPA which allows fee and cost shifting for successful litigants, *see* 15 U.S.C. § 1692k(a)(3), I believe that a system which places this additional cost on litigants will make the cost of filing suit under the FDCPA prohibitive. This external barrier to suit will chill potential litigants from even bringing FDCPA claims, and the protection of the FDCPA will be lost for most consumers.

I cannot disagree with my colleagues' conclusion, merely the path they take to reach that conclusion. For the foregoing reasons, I concur.

---

1. "Prompt" is defined in this context as "[o]n time" or "done without delay." *See Webster's II New Riverside University Dictionary* 942 (1994). "Immediate," on the other hand, is defined as "[a]cting or taking place with the interposition of another agency or object." *See id.* at 611. *Roget's II New Thesaurus* does not even list "prompt" and "immediate" as synonyms. *See Roget's II New Thesaurus* 515, 773 (1988).