412 F.3d 360
 Andrew A. GRECO, on behalf of himself and all others similarly situated, Plaintiff-Appellant,
v.
TRAUNER, COHEN & THOMAS, L.L.P., Robert Trauner, Michael J. Cohen and Russell S. Thomas, Defendants-Appellees.
Docket No. 04-4605-CV.
 United States Court of Appeals, Second Circuit.
 Argued: May 26, 2005.
 Decided: June 21, 2005.
 
 Lawrence Katz, Katz & Kleinman PLLC, Uniondale, NY, for Plaintiff-Appellant.
 David M. Schultz, Hinshaw & Culbertson LLP (Matthew R. Henderson & Nancy G. Lischer, on the brief), Chicago, IL, for Defendants-Appellees.
 Before: CALABRESI, KATZMANN, and B.D. PARKER, Circuit Judges.
 CALABRESI, Circuit Judge.
 
 
 1
 Plaintiff-appellant Andrew A. Greco ("Greco") appeals the dismissal of his complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Greco brought suit under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), against defendants-appellees Robert Trauner, Michael J. Cohen, and Russell S. Thomas, along with their law firm, Trauner, Cohen & Thomas, L.L.P. (collectively, "the defendants" or "the law firm"). On the basis of the pleadings and the attachments thereto, see Fed.R.Civ.P. 12(c), the district court found that no FDCPA violation could possibly have occurred. For the reasons that follow, we affirm.
 
 I. BACKGROUND
 
 2
 On November 20, 2002, Greco received a debt collection letter (also known as a "dunning letter") from the defendants. The letter, printed on Trauner, Cohen & Thomas, L.L.P. letterhead, read as follows:
 
 Dear Andrew A. Greco:
 
 3
 The firm of Trauner, Cohen & Thomas is a law partnership representing financial institutions in the area of creditors rights. In this regard, this office represents the above named BANK OF AMERICA who has placed this matter, in reference to an original account with [sic] for collection and such action as necessary to protect our client.
 
 
 4
 At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.
 
 
 5
 If you have any questions regarding this matter, please contact this office at 404.233.1900 or toll free at 1.888.696.1900 between the hours of 8 A.M. and 9 P.M. on Friday, and 8 A.M. to 2 P.M. on Saturday.
 
 
 6
 Very truly yours,
 
 Trauner, Cohen & Thomas, LLP
 
 CONSUMER NOTICE PURSUANT TO 15 U.S.C. SECTION 1692(G)
 
 
 7
 You are hereby given notice of the following information concerning the above referenced debt.
 
 
 8
 1. Unless, within 30 days after receipt of this notice you dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the creditor and by this Firm.
 
 
 9
 2. If you notify us in writing within said 30 days that the debt, or any portion thereof is disputed, we will obtain verification of the debt, or a copy of any judgment against you, and we will mail such verification to you.
 
 
 10
 3. In addition, upon your written request within said 30 days, this Firm will provide the name and address of the original creditor if the original creditor is different from the current creditor.
 
 
 11
 4. This firm is attempting to collect a debt on behalf of the creditor and any information obtained will be used for that purpose.
 
 
 12
 YOUR RIGHTS UNDER FEDERAL LAW TO REQUEST VERIFICATION OF YOUR OBLIGATION TO OUR CLIENT WITHIN 30 DAYS MUST BE ASSERTED IN WRITING AND IS NOT AFFECTED BY OUR REQUEST THAT YOU CONTACT OUR OFFICE BY TELEPHONE.
 
 
 13
 The letter was not signed by any individual attorney. The firm's name, however, was printed as a signature block.
 
 
 14
 On July 23, 2003, plaintiff filed suit against defendants (both as a law firm and as individuals), alleging that the above-mentioned communication violated the FDCPA. Specifically, Greco alleged that the letter violated two separate FDCPA provisions.[1] First, he asserted that the letter misleadingly represented the level of attorney involvement, thereby violating, in violation of § 1692e's general ban on deceptive practices in connection with debt collection, § 1692e(3)'s ban on falsely representing that an individual is an attorney, and § 1692e(10)'s ban on deceptive means to collect a debt. Second, Greco claimed that the letter's disclosure statement — because it stated that the debtor's failure to dispute the debt would result in both the debt collector and the creditor (as opposed to the debt collector alone) assuming the debt to be valid — misled debtors as to their rights, in violation of § 1692g. Greco requested statutory damages for each purported violation of FDCPA. He also sought to certify a class of persons receiving similar debt collection letters.
 
 
 15
 The district court determined, as a matter of law, that the letter was not misleading in its representation of attorney involvement, or in its explication of the debtor's rights, and hence that it could not support Greco's claims for relief under FDCPA. First, the district court determined that the letter did not misstate the level of attorney participation, because the letter prominently stated in normal typeface that "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account," and merely advised the creditor that "if you fail to contact this office, our client may consider additional remedies to recover the balance due." Thus, the district court reasoned, even the least sophisticated of debtors would understand that, while this was a letter from a law firm, no attorney had specifically examined the recipient's account information, and hence no attorney had yet recommended filing a lawsuit against the creditor. Second, with respect to the disclosure statement, the court noted that the letter's language almost identically tracked the words of the FDCPA itself. The only change was the statement that the creditor, in addition to the debt collector, would assume that the debt was valid if the debt collector was not notified of a dispute within 30 days. The court concluded that this statement would not mislead recipients, because the letter's language "does not create confusion about the debtor's right to contest the debt within thirty days." Having reached these conclusions on the basis of the complaint and the attached debt collection letter, the court dismissed the complaint in its entirety. This appeal followed.
 
 II. DISCUSSION
 
 16
 We review a dismissal under Fed.R.Civ.P. 12(c) using the same de novo standard applicable to dismissals pursuant to Fed.R.Civ.P. 12(b)(6). See, e.g., Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987). Thus, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, a complaint should not be dismissed under Rule 12(c) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation marks omitted).
 
 
 17
 Congress enacted FDCPA in order "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To achieve this goal, and to protect the most vulnerable population of debtors from abusive and misleading practices, we have construed FDCPA to require that debt collection letters be viewed from the perspective of the "least sophisticated consumer." Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir.1993). We have observed, however, that "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness," id., and that some courts have held that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Id. (internal quotation marks omitted) (citing Johnson v. NCB Collection Services, 799 F.Supp. 1298, 1306-07 (D.Conn.1992), and Gaetano v. Payco of Wisconsin, Inc., 774 F.Supp. 1404, 1411 (D.Conn.1990)). In this way, our Circuit's "least sophisticated consumer" standard is an objective analysis that seeks to protect "the naive" from abusive practices, id. at 1320, while simultaneously shielding debt collectors from liability for "bizarre or idiosyncratic interpretations" of debt collection letters, id.
 
 
 18
 A. False Representation of Attorney Involvement
 
 
 19
 Greco's primary argument is that the defendants violated FDCPA by sending a debt collection letter, signed by the law firm and on law firm stationary, thereby implying that the firm had analyzed the debtor's case and had rendered legal advice to the creditor concerning that case. Specifically, Greco asserts that "an attorney cannot send a collection letter without being meaningfully involved as an attorney within the collection process." In support of that assertion, Greco cites our decision in Clomon v. Jackson, 988 F.2d 1314 (2d Cir.1993), where we stated: [T]he use of an attorney's signature on a collection letter implies that the letter is "from" the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent.... [T]he use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.
 
 
 20
 Id. at 1321 (emphasis added). He also cites Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir.2003), in which several law firms were sued after sending a debt collection letters on firm letterhead, without any review of the recipient's individual case. In Miller we recognized that "[a]lthough there is no dispute that [the defendant law firms] are law firms, or that the letters sent by those firms were `from' attorneys in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered `from an attorney' within the meaning of the FDCPA." Id. at 301. Because "the letters sent by [the defendant law firms] were form letters generated by a computerized debt collection system without any meaningful attorney involvement in the process," id. (emphasis added), we there vacated an award of summary judgment to the defendants. Greco argues that here, as in Clomon and Miller, the letter's presentation, its letterhead, and its signature block over-represented, in violation of § 1692e, the level of attorney involvement.
 
 
 21
 Greco's claim rests on a misunderstanding of the FDCPA's requirements, and of our prior explications of that statute. One cannot, consistent with FDCPA, mislead the debtor regarding meaningful "attorney" involvement in the debt collection process. But it does not follow that attorneys may participate in this process only by providing actual legal services. In fact, attorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is not misleading. Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.
 
 
 22
 In Miller and Clomon, we established that a letter sent on law firm letterhead, standing alone, does represent a level of attorney involvement to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in that implied level of involvement, the letter is, therefore, misleading within the meaning of the FDCPA. But of course, the implied level of attorney involvement is just that — implied. The letter's representation to the debtor is a consequence of the letter's content and presentation. And so, in these cases, we observed that a properly constructed letter with different presentation or content might connote far less actual attorney involvement, thereby satisfying the FDCPA's requirements. See Miller, 321 F.3d at 301 ("`The use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent.'") (quoting Clomon, 988 F.2d at 1321) (emphasis added).
 
 
 23
 In contradistinction to the letters at issue in Clomon and Miller,[2] the defendants' letter included a clear disclaimer explaining the limited extent of their involvement in the collection of Greco's debt. The defendants stated that, although "this office represents the above named BANK OF AMERICA" in the collection of Greco's debt, "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Nothing else in the letter confused or contravened this disclaimer of attorney involvement. In light of the disclaimer, we agree with the district court that the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated his or her case, or made recommendations regarding the validity of the creditor's claims. Accordingly, the district court was correct to conclude, as a matter of law, that the defendants had not used any "false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including the "false representation or implication that any individual is an attorney or that any communication is from an attorney," 15 U.S.C. § 1692e(3), with meaningful involvement as an attorney in the debtor's case.
 
 B. Disclosure of the Debtor's Rights
 
 24
 Greco also asserts that the defendants violated the FDCPA by inadequately and misleadingly explaining the debtor's rights, in violation of § 1692g, which requires that debt collection letters include a "statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3). Greco points out that the defendants, in their letter, stated not only that the debt collector would assume the debt as valid if no protest was lodged within thirty days of receipt, but also that the creditor would make the same assumption. This addition, he argues, is so confusing as to frustrate the FDCPA's information-delivery functions.
 
 
 25
 We disagree with Greco's characterization of the letter's overall message, and fail to see how the defendants' addition to the letter's disclosure statement would mislead or deceive in any way. The letter's language tracks the statute almost verbatim; only the reference to "creditor" differs from the FDCPA itself. When read by the least sophisticated debtor, nothing in the letter's current wording would discourage a debtor from contesting the debt within the thirty day window. (To the contrary, the effect of the "creditor" addition, if any, could only be additional encouragement to contest the debt.) Nor could the letter be read, in any reasonable fashion, to suggest that the creditor's rights somehow change after thirty days. Quite simply, we do not see how the addition reduces the veracity or lucidity of the letter's disclosure statement. Cf. Bartlett v. Heibl, 128 F.3d 497, 499-502 (7th Cir. 1997) (holding that, where the collection letter supplemented the required statutory disclosure with the claim that the debtor's failure to contact the debt collector within one week would result in legal action being commenced, the recipient would be confused as to how long he or she had to contest the debt's validity, and hence that § 1692g had been violated by the addition). We agree, then, with the district court's conclusion that the letter's language satisfied the disclosure requirements set out in § 1692g.
 
 III. CONCLUSION
 
 26
 In light of the letter's language, the district court was correct to determine, as a matter of law, that no FDCPA claim could lie. The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The FDCPA, provides, in relevant part, as follows:
 
 § 1692e. False or misleading representations
 
 A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
 * * * * * *
 (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.
 * * * * * *
 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
 * * * * * *
 
 § 1692g. Validation of debts
 
 (a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing ...
 (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector....
 15 U.S.C. § 1692e, g.
 
 
 [2]
 InClomon, the debt collection letter was signed (digitally, as part of a mass mailing) by a particular attorney, who stated that "[y]our account was referred to us with instructions to pursue this matter to the furthest extent we deem appropriate . . . . Acting as General Counsel for NCB Collection Services, I have told them that they can lawfully undertake collection activity to collect your debt." Clomon, 988 F.2d at 1317 (omission in original). The obvious implication of the letter was that the undersigned attorney had personally reviewed the debtor's file, and had suggested a legal course of action to recover the debt. In Miller, the letter stated, "Please be advised that we represent the above-named creditor who claims you have a delinquent balance as stated above. After you have read the important notice on the reverse side of this letter, if appropriate please call our office to resolve this matter. When paying the balance in full or if you are unable to call our office, check one of the options below and return the bottom portion of this letter in the self-addressed envelope provided for your convenience. Very truly yours, WOLPOFF & ABRAMSON, L.L.P." Miller, 321 F.3d at 296. Significantly, the debt collection letter in Miller contained no language whatsoever to mitigate the impression that an attorney had evaluated the debtor's case with an eye towards filing a lawsuit.