# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 3, 2009

Charles R. Fulbruge III
Clerk

No. 08-20544

JOSE GONZALEZ

Plaintiff-Appellant

v.

MITCHELL N. KAY; LAW OFFICES OF MITCHELL N. KAY, P.C.

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

PRADO, Circuit Judge:

Plaintiff-Appellant Jose Gonzalez ("Gonzalez") allegedly failed to pay his Sprint PCS Wireless cell phone bills, totaling $448.97. Sprint turned the consumer debt over to US Asset Management Services, Inc. ("US Asset"), which in turn used the services of Defendants-Appellees Mitchell N. Kay ("Kay") and the Law Offices of Mitchell N. Kay, P.C. ("the Kay Law Firm") to collect the debt. The Kay Law Firm sent a collection letter to Gonzalez, which Gonzalez asserts violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692e. The district court dismissed Gonzalez's case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). We reverse.

## I. FACTUAL BACKGROUND

Gonzalez owed US Assets $448.97 based on a consumer debt he initially owed to Sprint PCS Wireless.[1] US Assets turned to the Kay Law Firm to collect the debt. On November 21, 2007, the Kay Law Firm sent a collection letter to Gonzalez.[2] The letter was printed on the Kay Law Firm's letterhead, but it was not signed. The letterhead states, "admitted in New York & Washington, D.C.," which the parties agree is a representation that Kay was admitted to practice law in these jurisdictions. The front of the letter states,

> Please be advised that your account, as referenced above, is being handled by this office.

> We have been authorized to offer you the opportunity to settle this account with a lump sum payment, equal to 65% of the balance due – which is $291.83!

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.

> If you notify this office in writing within 30 days from receiving this notice, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

> If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

---

[1] Gonzalez actually disputed whether he owed the debt, but that issue is irrelevant to this appeal.

[2] In his brief, Gonzalez also mentions a similar letter that the Kay Law Firm sent him on January 8, 2008. However, he never referenced the latter letter in his complaint, so we may not consider it. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint, including those made on appeal."). Regardless, the two letters are virtually identical.

After a large white blank space, the bottom of the letter directs the recipient to "PLEASE ADDRESS ALL PAYMENTS TO" the "Law Offices of Mitchell N. Kay, P.C." Immediately below the payment information, the letter states, "Notice: Please see reverse side for important information." A box surrounds this notice. Below the notice box is a detachable payment stub.

On the back, the letter states, in the same font and typeface as the text on the front,

> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

> Notice about Electronic Check Conversion: Sending an eligible check with this payment coupon authorizes us to complete the payment by electronic debit. If we do, the checking account will be debited in the amount shown on the check – as soon as the same day we receive the check – and the check will be destroyed.

> At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account.

Kay and the Kay Law Firm assert that this "disclaimer" language is sufficient to notify Gonzalez that lawyers were not involved in the debt collection. The parties agree that neither Kay nor any lawyers in his firm reviewed Gonzalez's file or were actively involved in sending the letter. Instead, Gonzalez asserted in his complaint that the letter was deceptive in that the Kay Law Firm "pretended to be a law firm with a lawyer handling collection of the Account when in fact no lawyer was handling the Account or actively handling the file." Gonzalez essentially contends that the Kay Law Firm is not actually a law firm at all but instead is a debt collection agency that uses the imprimatur of a law firm to intimidate debtors into paying their debts.

## II. JURISDICTION AND STANDARD OF REVIEW

Gonzalez brought suit, alleging that the Kay Law Firm's debt collection letter violated the FDCPA. Relying upon the disclaimer, the district court

entered a final judgment dismissing the case pursuant to Rule 12(b)(6), meaning that this court has jurisdiction under 28 U.S.C. § 1291.

"This court reviews a district court's dismissal under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997). We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami*, 377 F.3d at 495. "At the same time we do not consider the debtor as tied to the very last rung on the [intelligence or] sophistication ladder." *Id*. (internal quotation marks omitted) (alteration in original). "This standard serves the dual purpose of protecting all consumers,

including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor*, 103 F.3d at 1236.

## III. DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. The statute then lists several activities that violate the FDCPA. *See id.* § 1692e(1)-(16). Gonzalez claims that Kay and the Kay Law Firm violated subsections (3) and (10). Subsection (3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." *Id.* § 1692e(3). Subsection (10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). There is no dispute that Gonzalez is a "consumer" under the FDCPA and that Kay and the Kay Law Firm are "debt collectors" under the Act. *See id.* § 1692a(3), (6). A debt collector who violates the FDCPA is liable for actual damages, additional damages of up to $1,000, and attorneys' fees. *See id.* § 1692k.

There are sound policy reasons for the FDCPA's prohibition on a debt collector sending a collection letter that is seemingly from an attorney. Judge Evans of the Seventh Circuit adroitly explained the intimidation inherent in this type of communication:

5

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.

*Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996). A letter from a lawyer implies that the lawyer has become involved in the debt collection process, and the fear of a lawsuit is likely to intimidate most consumers. "Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word 'attorney' in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file." *Id.* In the alternative, a lawyer acting as a debt collector must notify the consumer, through a clear and prominent disclaimer in the letter, that the lawyer is wearing a "debt collector" hat and not a "lawyer" hat when sending out the letter. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 361-62 (2d Cir. 2005).

In *Taylor*, this court reversed the award of summary judgment to a defendant law firm under facts that were similar to those in the present case. *Taylor*, 103 F.3d at 1237. The collection letter in question included a facsimile of the lawyer's signature under the law firm's letterhead, informed consumers that the creditor had retained the law firm to collect the debt, and stated that the creditor had instructed the law firm to file suit against the debtor if the debtor did not pay the debt within ten days. *Id.* However, the summary judgment evidence demonstrated that the lawyer and law firm were not at all involved in reviewing past due accounts or sending the letters. *Id.* In reversing the award of summary judgment to the law firm/debt collector, we held that "a debt collector, who uses a mass-produced collection letter using the letterhead

and facsimile signature of a lawyer who is not actually participating in the collection process, violates § 1692e(3)." *Id.* at 1238.

In reaching this conclusion, we relied upon the Second Circuit's decision in *Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993). In *Clomon*, the Second Circuit held that a lawyer violated the FDCPA when he "authorized the sending of debt collection letters bearing his name and a facsimile of his signature without first reviewing the collection letters or the files of the persons to whom the letters were sent." *Id.* at 1316. This court in *Taylor* quoted the following passage from *Clomon*:

> "The use of an attorney's signature on a collection letter implies that the letter is 'from' the attorney who signed it; it implies, in other words, that the attorney directly controlled or supervised the process through which the letter was sent . . . . The use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent . . . . There will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e."

103 F.3d at 1238 (quoting *Clomon*, 988 F.2d at 1321) (omissions in *Taylor*) (alterations omitted). The court in *Clomon* highlighted several factors that were important to its decision that the lawyer violated the FDCPA, e.g., that the letter was on the law firm's letterhead, included the lawyer's signature, and contained language stipulating that the lawyer had considered the individual debtors' files and had made judgments on how to collect the debts. *Clomon*, 988 F.2d at 1320-21.

The Second Circuit more recently decided another FDCPA case that explains how a lawyer, acting as a debt collector, can avoid liability by including a clear and prominent disclaimer in the collection letter. *See Greco*, 412 F.3d at 365. In *Greco*, the consumer received a letter printed on a law firm's letterhead but with no signature except for the firm's name in the signature block. *Id.* at

361. The letter stated that the law firm represented the creditor for "collection and such action as necessary to protect our client." *Id*. The letter also contained the following disclaimer: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due." *Id*. The consumer filed suit, alleging that the letter violated Sections 1692e(3) and (10) of the FDCPA. *Id*. at 362. The district court dismissed the case under Federal Rule of Civil Procedure 12(c) (motion for judgment on the pleadings), determining as a matter of law that the letter did not violate the FDCPA. *Id*. The Second Circuit affirmed, concluding that the disclaimer explained the limited extent of any attorney involvement in collecting the debt. *Id*. at 365. The court provided this important guidance:

> [A]ttorneys can participate in debt collection in any number of ways, without contravening the FDCPA, so long as their status as attorneys is *not misleading*. Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes *disclaimers* that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Id*. at 364.

The Sixth and Third Circuits also have provided some recent guidance on this issue. In *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440-41 (6th Cir. 2008), the Sixth Circuit concluded that there was a fact issue as to whether the letter in question was deceptive and misleading given that there were factors that cut both ways. Specifically, the letter was printed on the law firm's letterhead and made repeated references to a law firm, but it also stated that it was from a "debt collector" and was "signed" by an unnamed "Account Representative." *Id*. at 440. Similarly, the Third Circuit ruled in

*Rosenau v. Unifund Corp.*, 539 F.3d 218, 223-24 (3d Cir. 2008), that the "least sophisticated debtor" could reasonably conclude that a letter, which came from the debt collector's "Legal Department," suggested current attorney involvement.

Finally, the Middle District of Florida recently denied summary judgment to the Kay Law Firm after considering a letter that is virtually identical to the one in this case. *See Brazier v. Law Offices of Mitchell N. Kay, P.C.*, No. 8:08-cv-156, 2009 WL 764161, at *3 (M.D. Fla. Mar. 19, 2009). The court determined that the use of the law firm's letterhead and the placement of the disclaimer on the back made the question of whether the letter was deceptive a factual dispute for the jury to decide. *Id.* In particular, the court highlighted the contradiction between the law firm letterhead on the front and the disclaimer on the back of the letter. *Id.* at *2. The court distinguished *Greco* by noting that the Second Circuit in *Greco* analyzed the language of the disclaimer, not its placement. *Id.* at *3.

In sum, the main difference between the cases is whether the letter included a clear, prominent, and conspicuous disclaimer that no lawyer was involved in the debt collection at that time. There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer. At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law, especially when they do not contain any disclaimer regarding the attorney's involvement. In the middle, there are letters that include contradictory messages and therefore present closer calls. The courts in *Taylor*, *Clomon*, *Kistner*, and *Rosenau* ruled in favor of the plaintiff when the letter was on law firm letterhead, did not include any disclaimer, and (in *Taylor* and *Clomon*) included the signature of an attorney, even though the letter may have stated that it was from a "debt collector." Similarly, the court in *Brazier* ruled against the Kay Law Firm when analyzing virtually the exact same letter as here because the

disclaimer, on the back of the letter, was not clear and prominent and contradicted the law firm's letterhead on the front. By contrast, the court in *Greco* ruled in favor of the law firm because the letter stated, in the body of the text, that no lawyer had personally reviewed the file.[3]

Here, the letter was printed on the law firm's letterhead, but it was unsigned. On the back, the letter indicated that it was from a "debt collector" and included the sentence, "At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." This is the exact same disclaimer that the court in *Greco* found dispositive. *See Greco*, 412 F.3d at 361. However, the disclaimer in *Greco* was part of the body of the letter on the front page; a consumer who read the main text of the letter would necessarily learn that the law firm was sending the letter but that no attorneys had reviewed the file. In contrast, the "least sophisticated consumer" reading the letter from the Kay Law Firm would not learn that the letter was from a debt collector unless the consumer turned the letter over to read the "legalese" on the back. The disclaimer on the back of the letter completely contradicted the message on the front of the letter—that the creditor had retained the Kay Law Firm and its lawyers to collect the debt. That is, the disclaimer on the back may

---

[3] Several district court cases also have relied upon the existence—or lack thereof—of a clear disclaimer in a debt collection letter. *See Martsolf v. JBC Legal Group, P.C.*, No. 1:04-CV-1346, 2008 WL 275719, at *10 (M.D. Pa. Jan. 30, 2008) (finding liability under the FDCPA in part because "[t]he letters do not include a disclaimer stating that no attorney has personally reviewed the debt"); *Navarro v. Eskanos & Adler*, No. C 06-02231 WHA, 2007 WL 549904, at *6 (N.D. Cal. Feb. 20, 2007) (denying summary judgment because, inter alia, "[t]he letter contains no disclaimer of an attorney's involvement"); *Miller v. Wolpoff & Abramson, L.L.P.*, 471 F. Supp. 2d 243, 248 (E.D.N.Y. 2007) (noting that a lawyer need not show "meaningful involvement" to avoid liability for sending a letter if "a debt collection letter is signed by an attorney but includes a disclaimer about the extent to which attorneys are involved in reviewing individual debtors' cases"); *Pujol v. Universal Fid. Corp.*, No. 03 CV 5524, 2004 WL 1278163, at *5 (E.D.N.Y. June 9, 2004) (dismissing case because the least sophisticated consumer would not believe that the attorney had individually reviewed the file given the language in the letter stating, "I have not, nor will I, review each detail of your account status, unless you so request").

not have been *effective*. There was also ample room on the front of the letter to include this disclaimer so as to clearly articulate to the consumer the nature of the law firm's involvement. Accordingly, this letter falls in that middle ground in which the letter is neither deceptive as a matter of law nor not deceptive as a matter of law. Because the "least sophisticated consumer" reading this letter might be deceived into thinking that a lawyer was involved in the debt collection, the district court prematurely dismissed Gonzalez's complaint.

We acknowledge that this is a close case, which is why further inquiry at the district court is necessary. Based only on the allegations in the complaint and the letter itself, reasonable minds can differ as to whether this letter is deceptive. Although the mere presence of disclaimer language might be dispositive in certain circumstances, the context and placement of that disclaimer is also important. We do not construe the disclaimer in isolation but must analyze whether the letter is misleading as a whole. We caution lawyers who send debt collection letters to state clearly, prominently, and conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. The disclaimer must explain to even the least sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time. Debt collectors acting solely as debt collectors must not send the message that a lawyer is involved, because this deceptively sends the message that the "price of poker has gone up."

## IV. CONCLUSION

We hold that the district court erred in concluding that Gonzalez failed to state a claim for relief that Kay and the Kay Law Firm violated the FDCPA. We therefore REVERSE the district court's judgment and REMAND for further proceedings.

REVERSED and REMANDED.

E. GRADY JOLLY, Circuit Judge, dissenting:

I respectfully dissent. Contrary to the majority's analysis, I can only conclude that this collection letter conforms in every respect to the standards for legality recognized by the Second Circuit in *Greco v. Trauner, Coheen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005). Therefore, in my opinion, the majority creates a different but amorphous standard for the Fifth Circuit, effectively creating a circuit split. Furthermore, I believe that the majority takes the wrong road in turning to a jury to decide what is a legal question in a case involving no factual disputes.

I.

In *Greco*, the plaintiff asserted that a debt collection letter he received from the defendant law firm created the false impression that an attorney had reviewed his account. The letter was printed on the law firm's letterhead and the firm's name was used as a block signature. *Id.* at 361. The body of the letter also implied lawyer involvement because it referred to the creditor as the firm's "client," stated that the firm was "representing" the creditor in "this matter," and warned that the "client may consider additional remedies." *Id.* These statements, suggesting attorney involvement, were countered only by the following disclaimer tucked into the body of the letter: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Id.*

In reviewing this letter, the Second Circuit acknowledged that a debt collection letter sent on a law firm letterhead "implied" a certain level of attorney involvement. *Id.* at 364 (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003) and *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)). The court held, however, that a clear disclaimer can rectify this false implication:

> [A]n attorney can, in fact, send a debt collection letter
> without being meaningfully involved as an attorney

> within the collection process, so long as that letter includes *disclaimers* that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Greco*, 412 F.3d at 364. And the court concluded that the letter's disclaimer (quoted above and the same disclaimer in our letter today) was sufficiently clear. *Id.* at 365.

Under the standards enunciated in *Greco*, the letter before us now does not violate the Fair Debt Collection Practices Act ("FDCPA"). Indeed, the text of Kay's letter is significantly less suggestive of attorney involvement than the *Greco* letter. Unlike the *Greco* letter, Kay's letter does not mention "clients," "representation," "matters," "remedies," or any other jargon suggesting lawyer involvement. The body of the Kay letter contains little more than the statutorily required disclosures. *See* 15 U.S.C. § 1692g(a). The only suggestion of attorney involvement is the firm's name, "The Law Offices of Mitchell N. Kay, P.C.," which appears once in the letterhead and again in the remittal address.[1] And as earlier indicated, the Kay letter before us contains the *same* disclaimer as the approved *Greco* letter.

The question, then, is whether the disclaimer in Kay's letter reasonably explains to an unsophisticated consumer that no attorney has reviewed the account. The majority refers to Kay's disclaimer as "legalese" although the wording is identical to the disclaimer approved of in *Greco*, a case on which the majority relies. "Legalese" is surely an inaccurate description, considering that the wording is so plain: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." This sentence does not contain a single legal term. A reasonable unsophisticated consumer, whom we

---

[1] Kay is required to accurately state the name of his business. *See* 15 U.S.C. § 1692e(14).

13

assume can read, could not possibly have trouble understanding it.[2]  And the Second Circuit concluded that the language was sufficiently clear to correct the false impression created by multiple suggestions of the *Greco* letter that attorneys were involved in the collection process.  *Greco*, 412 F.3d at 365.

The majority attempts to distinguish *Greco only* on the grounds that Kay's disclaimer was placed on the back of the letter.  This distinction is relevant only if we assume that an unsophisticated consumer would not turn the letter over. That assumption, however, cannot be reconciled with the hypothetical unsophisticated consumer standard, which presumes that the consumer will read a law firm collection letter carefully:  "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Greco*, 412 F.3d at 363 (internal quotation marks omitted) (citing *Clomon*, 988 F.2d at 1318-19); *Gammon v. GC Servs. L.P.*, 27 F.3d 1254, 1257 (7th Cir. 1994). In this case, the letter contained, on its face, the following large-font blocked-off notice:

> Notice: Please see reverse side for important information.

Because the unsophisticated consumer is literate and concerned with his own financial affairs, we must conclude that he will read the letter with some care, that he will see this notice in plain simple language, that he will turn the letter over for "important information," and that he will read the plain language that

---

[2] I use the term "unsophisticated" merely to avoid the confusion described in *Gammon v. GC Servs. L.P.*, 27 F.3d 1254, 1257 (7th Cir. 1994), not for any substantive difference.  This Court has never chosen between the "least sophisticated" and the "unsophisticated" standards, but the "difference between the standards is de minimis at most." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 n.1 (5th Cir. 2002).

no attorney has reviewed his account. Indeed, the Second Circuit has held "that when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back." *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002). The Seventh Circuit has also concluded that after reading such a notice, "even unsophisticated consumers would turn the letter over to see the information on the back." *Sims v. GC Servs. L.P.*, 445 F.3d 959, 965 (7th Cir. 2006); *see also Webber v. Computer Credit, Inc.*, No. 09-CV-187 (JBW), 2009 WL 1883046, at *6 (E.D.N.Y. June 30, 2009) ("Consumers are expected to read a debt collection letter in its entirety; no violation exists solely because the validation notice is placed on the back side of the letter."). The term "unsophisticated" is not a synonym for illiterate or ignorant or indifferent or careless. We apply an objective standard in these cases to avoid the "bizarre" and "idiosyncratic" interpretation of collection letters that are bound to arise when one presumes that the consumer does not care about his own financial affairs and does not read the letter. *See Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

Because Kay's letter is in conformity with *Greco*, I respectfully suggest that the majority opinion creates a circuit split.[3] This is an area of the law where national uniformity is particularly important, and therefore I respectfully dissent.

---

[3] Kay asserts that he relied on *Greco* when crafting this letter. If that is true, Kay's reliance upon the Second Circuit's opinion may warrant application of the *bona fide* mistake exception found in § 1692k(c). *See Johnson v. Riddle*, 305 F.3d 1107, 1121-24 (10th Cir. 2002) (holding that a good faith mistake of law may satisfy § 1692k(c)); *id.* at 1122 n.14 (noting a circuit split regarding the application of § 1692k(c) to *bona fide* mistakes of law). That question, however, is not before us.

## II.

The majority remands this case for a jury trial, but the facts here are undisputed. Both parties agree that no attorney was involved with Gonzalez's account. The only question is a legal question: whether the hypothetical unsophisticated consumer would, after reading the letter, believe that an attorney was involved in his case.

Although we have never expressly stated that the application of the unsophisticated consumer standard to the language of a debt collection letter is a question of law, we have always assumed this to be the case. *See Owsley v. Coldata Inc.*, 104 F. App'x 994, 995 (5th Cir. 2004); *Goswami v. Am. Collections Enterp., Inc.*, 377 F.3d 488, 492 (5th Cir. 2004); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 346 (5th Cir. 2002); *McKenzie v. E.A. Uffman and Assocs.*,119 F.3d 358, 362 (5th Cir. 1997); *Taylor*, 103 F.3d at 1236-37. Never before has this Court suggested that the legal import of the language of a debt collection letter should be ruled on by a jury.

The other circuit courts are split on this issue. Several circuits consider the issue a question of law. *See, e.g., Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc.*, 59 F. App'x 406, 407-08 (2d Cir. 2003) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997).[4] Two circuits, however, consider it a question of fact. *See Kistner v. The Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008)

---

[4] These cases address whether language in a debt collection letter overshadowed or contradicted the disclosures required under § 1692g. Section 1692g(a) enumerates various required disclosures for debt collection letters. The question usually presented in § 1692g cases is whether, under the unsophisticated consumer standard, language in the letter contradicts or overshadows one of the required disclosures. Although this question is slightly different from the one presented in a § 1692e case, the inquiry is the same: how will an unsophisticated consumer interpret the language of a debt collection letter.

("a jury should determine whether the letter is deceptive and misleading"); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999).[5]

The existence of a circuit split is not surprising given the great difficulty that is often involved in classifying an issue as a question of fact or a question of law. The Supreme Court has noted that "the appropriate methodology for distinguishing questions of fact from questions of law has been, to say the least, elusive" and the Court has "yet to arrive at a rule or principle that will unerringly distinguish a factual finding from a legal conclusion." *Miller v. Fenton*, 474 U.S. 104, 113 (1985). Generally, distinguishing between a question of fact and a question of law often turns on practical considerations; *i.e.*, whether the question is more appropriately decided by a judge or a jury. *See, e.g.,* Henry P. Monaghan, *Constitutional Fact Review*, 85 Colum. L. Rev. 229, 237 ("The real issue is not analytic, but allocative: what decisionmaker should decide the issue?").

Of the cases cited above, only the *Terran* case and the *Johnson* case contain a relevant discussion of the law/fact distinction. *Terran* simply noted that its decision to consider the issue a question of law was "buttressed by the rationale behind [its] *de novo* review standard for contracts and other written instruments, including collective bargaining agreements and trust agreements." 109 F.3d at 1433. In *Johnson*, Judge Easterbrook concluded that federal judges are not well-suited to determine how an unsophisticated reader will interpret a dunning letter. 169 F.3d at 160. Analogizing FDCPA cases to trademark cases, he suggested that professional surveys are necessary to determine whether the

---

[5] In *Kistner*, the only dispute with respect to the letter was whether it "would give the least sophisticated consumer 'the impression that the letter[] [was a] communication[] from an attorney." 518 F.3d at 440 (alterations in original). Although the letter was on law firm letterhead *and lacked a disclaimer of attorney involvement*, the *Kistner* court concluded that the question should be put to a jury because it was signed by an unnamed "Account Representative" and expressly stated that it was from a debt collector. *Id.* at 440-41.

language of a collection letter is confusing or deceptive. *Id.* In a different case, Judge Posner reiterated *Johnson*'s reasoning:

> The intended recipients of dunning letters are not federal judges, and judges are not experts in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors. We are no more entitled to rely on our intuitions in this context than we are in deciding issues of consumer confusion in trademark cases, where the use of survey evidence is routine.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007). There are, however, several practical considerations that counsel against this approach.

First, the interpretation of a debt collection letter, under the FDCPA, does not involve any historical facts or other factual disputes that are the usual forage of juries. In the case before us now, the parties agree that no lawyer was meaningfully involved with Gonzalez's account. The only question is whether the letter, read in its entirety, gave a contrary impression. Because we apply an objective standard, the question is not whether this *particular* consumer was *actually* deceived, but instead the question is whether the objective unsophisticated consumer would be deceived. The hypothetical unsophisticated consumer is just that—hypothetical. It simply represents the legal standard by which we judge the clarity and candor of a debt collection letter.

Second, the usefulness of survey evidence in evaluating whether a dunning letter conforms with the law, as suggested by the Seventh Circuit, is, at best, doubtful. *See Johnson*, 169 F.3d at 1063 (Eschbach, J., concurring). Such jury trials allow the parties to present a parade of expert witnesses to persuade jurors that one survey more accurately gleans the perspective of an unsophisticated consumer than does the counter survey. This exercise will needlessly increase the expense, the complexity, and the length of many FDCPA

cases, which should be short and to the point, lest consumers be deterred from even filing FDCPA actions. *Id.*

Third, judges historically are capable of fairly applying objective standards to undisputed facts. In probable cause cases, as one of several examples, judges must consider whether the circumstances known to the officer would have caused a "reasonably prudent person" to believe that an offense had been committed. *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003). Moreover, interpreting contracts, documents, letters, and statutes, is the quintessential work of judges—not juries.

Fourth, a serious policy consideration is implicated here: the uniform application of a federal statute. Debt collectors often send the same letter to thousands of consumers throughout the country. Judicial determination of the deceptiveness of such letters establishes precedent and provides predictability to the parties engaged in these transactions. The majority's approach, however, significantly undermines predictability by yielding ad hoc decisions concerning a federal statute of nationwide application. Even within the same circuit, leaving these decisions to a jury, when disputed facts are not presented, will result in variation of enforcement standards of the FDCPA. If a jury in this case, for example, should conclude that this letter violates the FDCPA because the disclaimer is on the reverse side of the letter (the factor highlighted by the majority), the next jury may well determine that an unsophisticated consumer would, in fact, have enough interest in his own affairs to turn the letter over and read the disclaimer.

### III.

In conclusion: The majority errs in failing to conclude that the debt collection letter in this case conforms with the standards in *Greco* and is therefore not violative of the FDCPA; consequently, the majority is incorrect in not ceding that its ruling creates a split with the Second Circuit. Furthermore,

the majority departs from our precedent by referring the case to a jury for the determination of legality. For the reasons I discussed above, the issue in this case is not appropriate and practical for submission to a jury trial.

For these reasons, I respectfully dissent.