E. GRADY JOLLY, Circuit Judge,
dissenting:
I respectfully dissent. Contrary to the majority’s analysis, I can only conclude that this collection letter conforms in every respect to the standards for legality recognized by the Second Circuit in Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360 (2d Cir.2005). Therefore, in my opinion, the majority creates a different but amorphous standard for the Fifth Circuit, effectively creating a circuit split. Furthermore, I believe that the majority takes the wrong road in turning to a jury to decide what is a legal question in a case involving no factual disputes.
I.
In Greco, the plaintiff asserted that a debt collection letter he received from the defendant law firm created the false impression that an attorney had reviewed his account. The letter was printed on the law firm’s letterhead and the firm’s name was used as a block signature. Id. at 361. The body of the letter also implied lawyer involvement because it referred to the creditor as the firm’s “client,” stated that the firm was “representing” the creditor in “this matter,” and warned that the “client *608 may consider additional remedies.” Id. These statements, suggesting attorney involvement, were countered only by the following disclaimer tucked into the body of the letter: “At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.” Id.
In reviewing this letter, the Second Circuit acknowledged that a debt collection letter sent on a law firm letterhead “implied” a certain level of attorney involvement. Id. at 364 (citing Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir.2003) and Clomon v. Jackson, 988 F.2d 1314 (2d Cir.1993)). The court held, however, that a clear disclaimer can rectify this false implication:
[A]n attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes disclaimers that should make clear even to the “least sophisticated consumer” that the law firm or attorney sending the letter is not, at the time of the letter’s transmission, acting as an attorney.
Greco, 412 F.3d at 364. And the court concluded that the letter’s disclaimer (quoted above and the same disclaimer in our letter today) was sufficiently clear. Id. at 365.
Under the standards enunciated in Greco, the letter before us now does not violate the Fair Debt Collection Practices Act (“FDCPA”). Indeed, the text of Kay’s letter is significantly less suggestive of attorney involvement than the Greco letter. Unlike the Greco letter, Kay’s letter does not mention “clients,” “representation,” “matters,” “remedies,” or any other jargon suggesting lawyer involvement. The body of the Kay letter contains little more than the statutorily required disclosures. See 15 U.S.C. § 1692g(a). The only suggestion of attorney involvement is the firm’s name, “The Law Offices of Mitchell N. Kay, P.C.,” which appears once in the letterhead and again in the remittal address.[1] And as earlier indicated, the Kay letter before us contains the same disclaimer as the approved Greco letter.
The question, then, is whether the disclaimer in Kay’s letter reasonably explains to an unsophisticated consumer that no attorney has reviewed the account. The majority refers to Kay’s disclaimer as “legalese” although the wording is identical to the disclaimer approved of in Greco, a case on which the majority relies. “Legalese” is surely an inaccurate description, considering that the wording is so plain: “At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.” This sentence does not contain a single legal term. A reasonable unsophisticated consumer, whom we assume can read, could not possibly have trouble understanding it.[2] And the Second Circuit concluded that the language was sufficiently clear to correct the false impression created by multiple suggestions of the Greco letter that attorneys were involved in the collection process. Greco, 412 F.3d at 365.
The majority attempts to distinguish Greco only on the grounds that Kay’s disclaimer was placed on the back of the letter. This distinction is relevant only if we assume that an unsophisticated con *609 sumer would not turn the letter over. That assumption, however, cannot be reconciled with the hypothetical unsophisticated consumer standard, which presumes that the consumer will read a law firm collection letter carefully: “even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.” Greco, 412 F.3d at 363 (internal quotation marks omitted) (citing Clomon, 988 F.2d at 1318-19); Gammon v. GC Servs. L.P., 27 F.3d 1254, 1257 (7th Cir.1994). In this case, the letter contained, on its face, the following large-font blocked-off notice:
[[Image here]]
Because the unsophisticated consumer is literate and concerned with his own financial affairs, we must conclude that he will read the letter with some care, that he will see this notice in plain simple language, that he will turn the letter over for “important information,” and that he will read the plain language that no attorney has reviewed his account. Indeed, the Second Circuit has held “that when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back.” McStay v. I.C. System, Inc., 308 F.3d 188, 191 (2d Cir.2002). The Seventh Circuit has also concluded that after reading such a notice, “even unsophisticated consumers would turn the letter over to see the information on the back.” Sims v. GC Servs. L.P., 445 F.3d 959, 965 (7th Cir.2006); see also Weber v. Computer Credit, Inc., No. 09-CV-187 (JBW), 2009 WL 1883046, at *6 (E.D.N.Y. June 30, 2009) (“Consumers are expected to read a debt collection letter in its entirety; no violation exists solely because the validation notice is placed on the back side of the letter.”). The term “unsophisticated” is not a synonym for illiterate or ignorant or indifferent or careless. We apply an objective standard in these cases to avoid the “bizarre” and “idiosyncratic” interpretation of collection letters that are bound to arise when one presumes that the consumer does not care about his own financial affairs and does not read the letter. See Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997).
Because Kay’s letter is in conformity with Greco, I respectfully suggest that the majority opinion creates a circuit split.[3] This is an area of the law where national uniformity is particularly important, and therefore I respectfully dissent.
II.
The majority remands this case for a jury trial, but the facts here are undisputed. Both parties agree that no attorney was involved with Gonzalez’s account. The only question is a legal question: whether the hypothetical unsophisticated consumer would, after reading the letter, believe that an attorney was involved in his case.
Although we have never expressly stated that the application of the unsophisticated consumer standard to the language *610 of a debt collection letter is a question of law, we have always assumed this to be the case. See Owsley v. Coldata Inc., 104 F.App’x 994, 995 (5th Cir.2004); Goswami v. Am. Collections Enterp., Inc., 377 F.3d 488, 492 (5th Cir.2004); Peter v. GC Servs. L.P., 310 F.3d 344, 346 (5th Cir.2002); McKenzie v. E.A. Uffman and Assocs., 119 F.3d 358, 362 (5th Cir.1997); Taylor, 103 F.3d at 1236-37. Never before has this Court suggested that the legal import of the language of a debt collection letter should be ruled on by a jury.
The other circuit courts are split on this issue. Several circuits consider the issue a question of law. See, e.g., Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc., 59 Fed.Appx. 406, 407-08 (2d Cir.2003) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir.1996)); Wilson v. Quadramed Corp., 225 F.3d 350, 353 n. 2 (3d Cir.2000); Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir.1997).[4] Two circuits, however, consider it a question of fact. See Kistner v. The Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 441 (6th Cir.2008) (“a jury should determine whether the letter is deceptive and misleading”); Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir.1999).[5]
The existence of a circuit split is not surprising given the great difficulty that is often involved in classifying an issue as a question of fact or a question of law. The Supreme Court has noted that “the appropriate methodology . for distinguishing questions of fact from questions of law has been, to say the least, elusive” and the Court has “yet to arrive at a rule or principle that will unerringly distinguish a factual finding from a legal conclusion.” Miller v. Fenton, 474 U.S. 104, 113, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Generally, distinguishing between a question of fact and a question of law often turns on practical considerations; i.e., whether the question is more appropriately decided by a judge or a jury. See, e.g., Henry P. Monaghan, Constitutional Fact Review, 85 Colum.L.Rev. 229, 237 (“The real issue is not analytic, but allocative: what decisionmaker should decide the issue?”).
Of the cases cited above, only the Terran case and the Johnson case contain a relevant discussion of the law/fact distinction. Terran simply noted that its decision to consider the issue a question of law was “buttressed by the rationale behind [its] de novo review standard for contracts and other written instruments, including collective bargaining agreements and trust agreements.” 109 F.3d at 1433. In Johnson, Judge Easterbrook concluded that federal judges are not well-suited to determine how an unsophisticated reader will interpret a dunning letter. 169 F.3d at 160. Analogizing FDCPA cases to trademark cases, he suggested that professional surveys are necessary to determine wheth *611 er the language of a collection letter is confusing or deceptive. Id. In a different case, Judge Posner reiterated Johnson’s reasoning:
The intended recipients of dunning letters are not federal judges, and judges are not experts in the knowledge and understanding of unsophisticated consumers facing demands by debt collectors. We are no more entitled to rely on our intuitions in this context than we are in deciding issues of consumer confusion in trademark cases, where the use of survey evidence is routine.
Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 776 (7th Cir.2007). There are, however, several practical considerations that counsel against this approach.
First, the interpretation of a debt collection letter, under the FDCPA, does not involve any historical facts or other factual disputes that are the usual forage of juries. In the case before us now, the parties agree that no lawyer was meaningfully involved with Gonzalez’s account. The only question is whether the letter, read in its entirety, gave a contrary impression. Because we apply an objective standard, the question is not whether this particular consumer was actually deceived, but instead the question is whether the objective unsophisticated consumer would be deceived. The hypothetical unsophisticated consumer is just that — hypothetical. It simply represents the legal standard by which we judge the clarity and candor of a debt collection letter.
Second, the usefulness of survey evidence in evaluating whether a dunning letter conforms with the law, as suggested by the Seventh Circuit, is, at best, doubtful. See Johnson, 169 F.3d at 1063 (Eschbach, J., concurring). Such jury trials allow the parties to present a parade of expert witnesses to persuade jurors that one survey more accurately gleans the perspective of an unsophisticated consumer than does the counter survey. This exercise will needlessly increase the expense, the complexity, and the length of many FDCPA cases, which should be short and to the point, lest consumers be deterred from even filing FDCPA actions. Id.
Third, judges historically are capable of fairly applying objective standards to undisputed facts. In probable cause cases, as one of several examples, judges must consider whether the circumstances known to the officer would have caused a “reasonably prudent person” to believe that an offense had been committed. Evett v. Deep E. Tex. Reg’l Narcotics Trafficking Task Force, 330 F.3d 681, 688 (5th Cir.2003). Moreover, interpreting contracts, documents, letters, and statutes, is the quintessential work of judges — not juries.
Fourth, a serious policy consideration is implicated here: the uniform application of a federal statute. Debt collectors often send the same letter to thousands of consumers throughout the country. Judicial determination of the deceptiveness of such letters establishes precedent and provides predictability to the parties engaged in these transactions. The majority’s approach, however, significantly undermines predictability by yielding ad hoc decisions concerning a federal statute of nationwide application. Even within the same circuit, leaving these decisions to a jury, when disputed facts are not presented, will result in variation of enforcement standards of the FDCPA. If a jury in this case, for example, should conclude that this letter violates the FDCPA because the disclaimer is on the reverse side of the letter (the factor highlighted by the majority), the next jury may well determine that an unsophisticated consumer would, in fact, have enough interest in his own affairs to turn the letter over and read the disclaimer.
*612 III.
In conclusion: The majority errs in failing to conclude that the debt collection letter in this case conforms with the standards in Greco and is therefore not violative of the FDCPA; consequently, the majority is incorrect in not ceding that its ruling creates a split with the Second Circuit. Furthermore, the majority departs from our precedent by referring the case to a jury for the determination of legality. For the reasons I discussed above, the issue in this case is not appropriate and practical for submission to a jury trial.
For these reasons, I respectfully dissent.

. Kay is required to accurately state the name of his business. See 15 U.S.C. § 1692e(14).

. I use the term "unsophisticated” merely to avoid the confusion described in Gammon v. GC Servs. L.P., 27 F.3d 1254, 1257 (7th Cir.1994), not for any substantive difference. This Court has never chosen between the "least sophisticated” and the "unsophisticated” standards, but the "difference between the standards is de minimis at most.” Peter v. GC Servs. L.P., 310 F.3d 344, 349 n. 1 (5th Cir.2002).

. Kay asserts that he relied on Greco when crafting this letter. If that is true, Kay’s reliance upon the Second Circuit’s opinion may warrant application of the bona fide mistake exception found in § 1692k(c). See Johnson v. Riddle, 305 F.3d 1107, 1121-24 (10th Cir. 2002) (holding that a good faith mistake of law may satisfy § 1692k(c)); id. at 1122 n. 14 (noting a circuit split regarding the application of § 1692k(c) to bona fide mistakes of law). That question, however, is not before us.

. These cases address whether language in a debt collection letter overshadowed or contradicted the disclosures required under § 1692g. Section 1692g(a) enumerates various required disclosures for debt collection letters. The question usually presented in § 1692g cases is whether, under the unsophisticated consumer standard, language in the letter contradicts or overshadows one of the required disclosures. Although this question is slightly different from the one presented in a § 1692e case, the inquiry is the same: how will an unsophisticated consumer interpret the language of a debt collection letter.

. In Kistner, the only dispute with respect to the letter was whether it “would give the least sophisticated consumer 'the impression that the letter! 1 [was a] communication! ] from an attorney.’ ” 518 F.3d at 440 (alterations in original). Although the letter was on law firm letterhead and lacked a disclaimer of attorney involvement, the Kistner court concluded that the question should be put to a jury because it was signed by an unnamed “Account Representative’’ and expressly stated that it was from a debt collector. Id. at 440-41.