NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Argued October 4, 2013
Decided January 22, 2014

### Before

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| Nos. 13-1625 & 13-2215 | Appeals from the United States District Court for the Northern District of Illinois, Eastern Division. |
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, *et al.*, *Plaintiffs-Appellees*, | |
| *v.* | No. 11 C 6263 |
| WINGRA STONE COMPANY, *Defendant-Appellant*. | Charles P. Kocoras, *Judge*. |

### Order

The dispute in this case concerns the required rate of contributions to a pension fund that has more than 40 schedules of contributions and benefits. The parties concur that a set of agreements requires Wingra Stone Co. to contribute at either the Schedule 17B rate (which the Fund uses for most private construction work) or the Schedule 18 rate (which the Fund uses for most public heavy and highway construction work). Until 2003 Wingra used the Schedule 17B rate when its employees spent all day on private projects and the Schedule 18 rate otherwise.

An agreement that the parties call the 2003 Addendum appears to preserve Wingra's right to continue this practice. (One paragraph reads: "Pension contributions on days where employees work portions of their shifts under both Agreements shall be the hourly contribution rate per the applicable contribution class in effect. On days where only private work is performed, the applicable daily rate may be used.") After this agreement took effect, however, Wingra started making all contributions at the Schedule 18 rate. Wingra says that this change reflects a clerical error; the Fund says that the 2003 Addendum required it. The 2003 Addendum was replaced by a 2006 Addendum, which omitted the second sentence we have quoted; Wingra's practice did not change.

The 2006 Addendum has an evergreen clause, providing for automatic annual renewal unless one party gives timely notice of a desire to amend or terminate the agreement. Teamsters Local 695 sent such a notice on March 19, 2008, demanding changes to the 2006 Addendum. Negotiations went nowhere, no new text was adopted, and Wingra continued to contribute for all hours at the Schedule 18 rate. But in June 2009 Wingra began to use the Schedule 17B rate for days on which employees worked exclusively on private-sector projects. On February 4, 2011, Wingra sent a letter withdrawing from the 2006 Addendum as of April 30, 2011.

This suit by the Fund seeks to recover from Wingra the difference between the Schedule 17B and Schedule 18 contribution rates for the period from June 2009 through April 2011. With interest, the dispute comes to about $80,000. (The Fund also sought to recover a shortfall for 2011–12 caused by Wingra's failure to use the contribution rates as revised in 2011; Wingra concedes that it owes what the Fund demanded for that period.) The district court entered summary judgment for the Fund. 2013 U.S. Dist. LEXIS 28068 (N.D. Ill. Feb. 26, 2013).

The district court decided that Wingra remained bound by the 2006 Addendum, despite the Union's letter, which under the Addendum's terms led to its termination, because with every monthly check making pension payments Wingra reaffirmed its legal obligation to make payments under the 2006 Addendum and several other agreements. Wingra calls this certification language boilerplate, which it is, but that does not make it a nullity. See *Moriarty v. Larry G. Lewis Funeral Directors Ltd*., 150 F.3d 773 (7th Cir. 1998). But it also does not help the Fund. Wingra has never denied that it must make pension contributions on all hours its employees work. The question is: at which schedule? The monthly certifications do not address that subject.

The district court also concluded that Wingra had ratified the 2006 Addendum by continuing to perform under it after Local 695 sent its letter. Again, however, this does not resolve the dispute—which concerns the *rate* of payment, not Wingra's obligation to

contribute. If the 2006 Addendum specified the use of Schedule 18 for all hours, then adhering to the 2006 Addendum following the termination notice might be important. Yet the 2006 Addendum does not identify the applicable schedule. All it says is that "[p]ension contributions on days where employees work portions of their shifts under both Agreements shall be the hourly contribution rate per the applicable contribution class in effect." What class is that? What happens on days when employees work exclusively under a private-sector collective bargaining agreement? The answers must lie in some other document.

The Fund says that two other agreements, which the parties call the Participation and Trust Agreements, require Wingra to use Schedule 18 for all contributions. Yet until the 2003 Addendum—which does *not* call for one schedule for all contributions—Wingra had used different schedules for public and private work, without protest by the Union or the Fund. Wingra adopted a one-schedule approach in 2003, but that cannot be attributed to the 2003 Addendum, which has a sentence (which we have quoted) disclaiming a one-schedule system. Wingra's explanation of administrative error may or may not be right, but it does not matter because Wingra is not asking for a refund of any amounts paid before June 2009.

The Fund's appellate brief does not point to any specific language in the Participation and Trust Agreements requiring Wingra to use Schedule 18 for all hours its employees work. If Wingra's pre-2003 practice of using both Schedule 17B and Schedule 18 (depending on the public or private nature of the job) did not modify the Participation and Trust Agreements to entrench a two-schedule approach, then Wingra's practice of using only Schedule 18 between 2003 and June 2009 did not modify any of the agreements to entrench a one-schedule approach.

This means that the Fund can prevail only by showing through extrinsic (parol) evidence that one or more of the multifarious agreements adopts a one-schedule approach, despite the absence of language prescribing that outcome. The district court could not resolve the suit on such a ground on summary judgment, however, because each side offers extrinsic evidence in its favor. Perhaps the district court will conclude that the dispute is not material. If so, then Wingra is entitled to prevail—for none of the documents expressly requires it to use Schedule 18 across the board. If there is material parol evidence on both sides, however, a trial will be required to sort this out. Lawyers for both sides said at oral argument that they do not want a trial, but the judiciary cannot use that stance to resolve the dispute in favor of one side rather than the other—though the parties could agree to a bench trial on stipulated facts or settle their controversy in light of this order's analysis.

It should be clear from what we have said that Wingra's use of the Schedule 18 rate between 2003 and 2009 is not itself extrinsic evidence that controls the meaning of the 2003 or 2006 Addendum—any more than Wingra's use of both Schedule 17B and Schedule 18 before 2003 is extrinsic evidence establishing Wingra's entitlement to do so for the indefinite future. Even when the meaning of legal documents can be affected by post-signing conduct, ambiguous conduct such as Wingra's is not conclusive. The district judge erred in thinking that Wingra's pre-2003 payment practice should be ignored and the 2003–09 payment practice treated as if it had amended the contracts. These contracts must be enforced according to their language and negotiating history; the remand is only for the purpose of allowing that history to be considered.

The judgment is affirmed to the extent it requires Wingra to pay at the correct rate for 2011–12. Otherwise the judgment is vacated, and the case is remanded for proceedings consistent with this order.